DELORES TYNES

*v.*

SUPREME LIFE INSURANCE COMPANY OF AMERICA,

*a corporation*

(No. 13453)

Decided November 19, 1974.

*James S. Redmond* for appellant.

*Sanders & Blue, Fred O. Blue* for appellee.

NEELY, JUSTICE:

This appeal was granted to determine whether the Circuit Court of Mercer County correctly interpreted a policy of life insurance. As this Court finds that the Circuit Court correctly applied the provisions of the insurance contract and that the policy provisions are not contrary to West Virginia law, the judgment of the Circuit Court of Mercer County is affirmed.

In 1961 the defendant, Supreme Life Insurance Company, issued a life insurance policy to William Thomas Morgan, then forty-two years old, in the amount of $5,000.00. From the date of issuance through December 1971 the insured made timely monthly premium payments; however, the premiums due January 1, 1972 and February 1, 1972 were not paid either by the insured or by anyone on his behalf. The insured died February 13,

1972 leaving the plaintiff, Delores Tynes, as beneficiary under the policy. While the insured owned the policy he borrowed $741.20 against the cash surrender value, which with interest at 5%, made the total indebtedness under the policy at the time of the insured's death $801.47. At the time of the insured's death the cash surrender value of the policy was $138.88 which represented the projected cash value at that time of $940.35 less the indebtedness of $801.47.

Under the nonforfeiture provisions the company tendered $738.45 to the plaintiff in full settlement, which the plaintiff refused on the grounds that she believed that there was $4,198.53 due her, a sum representing the $5,000.00 face value of the policy less the loan of $801.47.

The defendant insurance company successfully maintained in the Circuit Court that the following nonforfeiture provisions when read in *pari materia* establish the death benefit at $738.45. The relevant provisions of the policy are as follows:

"Option C. EXTENDED TERM INSURANCE—This policy may be continued as non-participating term insurance for the sum insured from the date of default for the period stipulated in the Table of Guaranteed Loan and Non-Forfeiture Values provided premiums have been paid for at least one (1) full year from the date this policy was issued. The extended term insurance shall be for such duration as the cash value will purchase when applied as a net single premium at the attained age nearest birthday of the Insured.

"20. AUTOMATIC EXTENDED INSURANCE. If one of the foregoing options is not elected within the grace period for payment of the premium in default, this policy will automatically be continued under the extended term insurance option from the date of default, subject, however, to the right of election of one of the other nonforfeiture options within sixty (60) days after the date of default.

"21. INDEBTEDNESS. Any indebtedness to the Company on or secured by this policy, at due date of the premium in default, will be deducted from the Cash Value, and the amount of Extended Insurance or Paid-Up Life Insurance will be reduced by the proportion that such indebtedness bears to the Cash Value."

The company maintained that as the thirty-one day grace period for the payment of the January 1, 1972 premium had expired and as the insured had not made any election with regard to alternative non-forfeiture options, Option C was automatically put into effect under the provisions of paragraph 20. The defendant then argued that under the provisions of paragraph 21, any indebtedness owed to the defendant reduced the amount of the extended insurance "by the proportion that such indebtedness bears to the Cash Value."

Using the table for non-forfeiture values, the cash value at the end of ten years and ten months was calculated at $188.07 per thousand or $940.35, which was subject to the $801.47 indebtedness. This left the previously stated amount of $138.88 as the actual cash value owned by the insured.

As the insured died before any option was exercised, the Automatic Extended Insurance provision became effective under paragraph 20. According to the tables for extended term insurance the length of time that the insurance would be extended was ten years and 356 days from the date of default. Under the provisions of paragraph 21 the amount of extended insurance was reduced by the proportion that the indebtedness bore to the cash value, that is 138.88/940.35 × 5000. Based upon this calculation, the extended term insurance to which the insured was entitled amounted to $738.45 for a period of ten years and 356 days.

The plaintiff argues unsucessfully that usurious interest was charged on the loan made to the insured because the death benefit was not for the face amount of the policy less the loan. The Court is of the opinion that

the plaintiff has not correctly read the non-forfeiture provisions of the policy, and that the reduction in the death benefit was in no way related to the rate of interest but rather was the result of the way in which the remaining cash surrender value of the policy was applied to the purchase of term insurance. The Court finds that the provisions of the insurance policy quoted above concerning option C and indebtedness are clear and unambiguous and that the trial court was correct when it determined that the insurance company had accurately computed the death benefits.

In addition, this Court has diligently searched Chapter 33, Article 13 of the *W. Va. Code* concerning statutory requirements for provisions in life insurance policies issued in this State, and the Court finds that the company's actions in this regard are not contrary to any statutory mandate. The Court has similarly examined the regulations of the State Insurance Commissioner and has determined that the provisions upon which defendant relies in the policy are not contrary to any regulations of the Commissioner.

Although the result in this case is harsh, the harsh effect is the result of the insured's failure to pay his last premium within the thirty-one day grace period and his untimely death so soon after the policy lapsed. Had the insured died ten years later than he did, the plaintiff would still be entitled to the death benefit of $738.45 in spite of the fact that the net cash value available for the payment of premiums for the extended term insurance was only $138.88. Although the company could have devised a non-forfeiture provision which would have applied the limited resources available, *i.e.*, $138.88 to the purchase of $5,000.00 worth of term insurance, the term would have been for a much shorter time. It was evidently determined that it is better to have a small amount of insurance for a longer time rather than a larger amount for a shorter time. Therefore the Court does not find that the provisions upon which the defend-

ant insurance company relies are either unconscionable or contrary to public policy.

Accordingly the judgment of the Circuit Court of Mercer County is affirmed.

*Affirmed.*