**TRANSAMERICA INSURANCE COMPANY, a corporation, Plaintiff,**

v.

**Helen ARBOGAST, Administratrix of the Estate of Don H. Arbogast, Deceased, Defendant.**

**Civ. A. No. 85–0246–E(K).**

United States District Court,
N.D. West Virginia,
Elkins Division.

June 10, 1987.

Michael Bonasso, Kay, Casto & Chaney, Charleston, W.Va., for plaintiff.

James C. Peterson, Hill & Peterson, Charleston, W.Va., for defendant.

## MEMORANDUM OPINION

KIDD, District Judge.

Presently before this Court are cross-motions for summary judgment filed by the parties. The matter has been fully briefed and the parties have entered into and filed a joint stipulation of facts and questions presented which will be set forth below. This action arises out of a dispute as to underinsured motorist coverage of an automobile insurance policy containing an "owned but not insured for this coverage" exclusion. This declaratory judgment action is brought pursuant to Title 28, United States Code, Section 2201 and W.Va.Code § 55-13-1, *et seq.* for the purpose of seeking a declaration from this Court as to the rights of the parties with respect to the insurance policy here in question. Jurisdiction of this Court is invoked by virtue of diversity of citizenship, 28 U.S.C. § 1332, the Court being of the opinion that this matter involves a controversy between citizens of different states exceeding the sum or value of $10,000, exclusive of interest and costs.

The parties have entered into and filed the following joint stipulation of facts and questions presented:

A. FACTS

1. Transamerica Insurance Company (hereinafter "Transamerica") is a corporation organized and existing under the laws of a state other than West Virginia, and has its principal place of business in a state other than West Virginia.

2. Helen Arbogast is a citizen and resident of the State of West Virginia, County of Randolph.

3. The amount in controversy in this cause exceeds $10,000.00.

4. The complaint and counter-claim herein for declaratory judgment are both brought pursuant to West Virginia Code § 55-13-1 et seq., and 28 USCA § 2201, for the purpose of seeking a declaration by the Court of the rights, status and other legal relations of the parties hereto, and for the purpose of determining questions of actual controversy between the parties hereto.

5. On or about January 4, 1984, Transamerica issued an automobile liability policy designated policy number TRA 1739 29 74 (hereinafter referred to as "Transamerica policy") naming Don H. Arbogast as the named insured, insuring a 1979 Ford automobile, which provided, inter alia, underinsured motorists coverage benefits of $100,000.00.

6. A copy of the terms of the insurance coverage under the Transamerica policy

is attached to the complaint filed in this action and is incorporated herein by reference for all purposes.

7. On or about June, 1985, Quality Insurance Company issued to Don H. Arbogast a motorcycle liability policy designated policy number MC 10727 (hereinafter "Quality policy"), naming Don H. Arbogast as the named insured, insuring the 1981 Honda motorcycle involved in the accident which is the subject matter of this case.

8. The application on which the Quality policy was issued indicated a waiver by Don H. Arbogast of underinsured motorists coverage benefits, and pursuant thereto, the Quality policy did not provide underinsured motorists coverage benefits.

9. On or about June 29, 1985, Don H. Arbogast was injured when the motorcycle which he owned and operated collided with an automobile owned and operated by Leroy T. McCollom.

10. On or about July 1, 1985, Don H. Arbogast died from the injuries which he received in such accident.

11. On or about July 5, 1985, Helen Arbogast was appointed Administratrix of the Estate of Don H. Arbogast, deceased, by an Order of the County Commission of Randolph County, West Virginia, a copy of which Order is attached hereto and incorporated herein by reference for all purposes as Exhibit A.

12. The automobile owned by Don H. Arbogast and insured by Transamerica was, in no way, involved with the collision described above, or the damages sustained by the deceased and/or his Estate resulting from such collision.

13. Helen Arbogast, as Administratrix of the Estate of Don H. Arbogast, has submitted a claim for damages to the liability insurance carrier for Leroy McCollom, and said carrier has agreed to pay the policy limits of liability insurance in the amount of $25,000.00 applicable to the accident in question in this case, but performance of the settlement is pending approval of the Circuit Court of Randolph County, West Virginia.

14. Helen Arbogast, as Administratrix of the Estate of Don H. Arbogast, has filed a claim with Transamerica Insurance Company seeking payment of benefits under the underinsured motorists coverage of the Transamerica policy.

15. Transamerica has denied payment of such claim on the ground that the terms and conditions of the Transamerica policy, generally, and the terms and conditions of Part C2 thereof, in particular, exclude underinsured motorists coverage for Don H. Arbogast in connection with the subject accident.

16. Don H. Arbogast, deceased, was a "covered person" as defined under the first definition of covered persons, on page 12 of the Transamerica policy, and Leroy T. McCollom was the owner and operator of an "underinsured motor vehicle" as defined on page 12, part C2 of the same policy.

17. The claim submitted to Transamerica by Helen Arbogast as Administratrix of the Estate of Don H. Arbogast falls within exclusion Al under Part C2 of the Transamerica policy thereunder (page 12 of the policy).

18. Such exclusionary clause, by its express and unambiguous language, operates to bar defendant's claim and defendant maintains that such exclusionary language is null and void as a matter of law.

B. QUESTIONS PRESENTED

1. Whether exclusion Al under Part C2 of the Transamerica policy is valid, to wit: Whether the "owned but not insured for this coverage" exclusionary language is valid in the State of West Virginia.

2. If the Court decides the first issue in the negative, a second issue arises, to wit: Whether the maximum underinsured coverage available in this case is the face amount of the limit on the Transamerica policy (in the instant case $100,000.00) or the face amount of the limit on the Transamerica policy less the policy limit paid under the general liability policy of the underinsured motorist (in the instant case $100,000.00 – $25,000.00 = $75,000.00).

The terms of the Transamerica policy regarding underinsured motorists coverage is as follows; the underlined portions below appear as bold face type in the policy here in question:

2. *UNDERINSURED MOTORISTS COVERAGE:* We will pay damages which a *covered person* is legally entitled to recover from the owner or operator of an *underinsured motor vehicle* because of bodily injury sustained by a covered person and caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the *underinsured motor vehicle.*

We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.

*"Coverd person"* as used in Part Means:

1. You or any *family member.*

2. Any other person while *occupying your covered auto.*

3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2. above.

*"Underinsured motor vehicle"* means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage.

However, *"underinsured motor vehicle"* does not include any vehicle:

1. to which a liability bond or policy applies at the time of the accident, but its limit for bodily injury liability is less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which *your covered auto* is principally garaged.

2. Owned by you or any *family member.*

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Which is a farm type tractor or equipment designed mainly for use off public roads while not upon public roads.

6. While located for use as a residence or premises.

7. Owned or operated by a person qualifying as a self-insurer under any applicable motor vehicle law.

8. To which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company denies coverage or is or becomes insolvent.

EXCLUSIONS

A. We do not provide Underinsured Motorists Coverage for bodily injury sustained by any person:

1. While *occupying,* or when struck by, any motor vehicle or trailer of any type owned by you or any *family member* which is not insured for this coverage under this policy.

2. While *occupying your covered auto* when it is being used to carry persons or property for a fee. This exclusion does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that the person is entitled to do so.

B. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any workers' or workmen's compensation, disability benefits or similar law.

Looking at the above policy language, the parties have stipulated that at the time of the accident, Arbogast was a covered person within the meaning of the policy and McCollom was operating an underinsured motor vehicle. The exclusion language applicable here under which Transamerica has denied coverage reads as follows:

EXCLUSIONS

A. We do not provide underinsured motorist coverage for bodily injury sustained by any person:

1. While *occupying,* or when struck by, any motor vehicle or trailer of any type owned by you or any *family*

*member* which is not insured for this coverage under this policy.

The policy defines the word "occupying" to mean "in, upon, getting in, on, out or off" (page 2 of policy).

The parties have stipulated that the language of the above exclusion is clear and unambiguous, but they dispute whether this "owned but not insured" exclusion is valid under West Virginia law.

■ In determining the plain meaning intended, the Court will look to the policy itself, as it is the opinion of the Court that the above policy provision is clear and unambiguous: *Prete v. Merchants Property Insurance Co.*, 159 W.Va. 508, 223 S.E.2d 441 (1976); *Atkins v. Stonewall Casualty Co.*, 155 W.Va. 81, 181 S.E.2d 269 (1971). Where provisions in an insurance policy are plain and unambiguous and where such provisions are not contrary to a statute, regulation, or public policy, the provisions will be applied and not construed judicially. *Farmers' and Merchants' Bank v. Balboa Insurance Co.*, 299 S.E.2d 1 (W.Va.1982); *Tynes v. Supreme Life Insurance Co.*, 158 W.Va. 188, 209 S.E.2d 567 (1974); *Shamblin v. Nationwide Mutual Ins. Co.*, 332 S.E.2d 639 (W.Va.1985). Here, for the purposes of coverage, the policy in question clearly and unambiguously defines what the term *"Your Covered Auto"* means. Page 1 of the policy sets forth as applicable here:

*"Your covered auto"* means:

(a) Any vehicle shown in the Declarations.

(b) Any of the following types of vehicles of which you acquire ownership during the policy period, provided that you ask us to insure it within thirty days after you become the owner:

(1) a private passenger auto.

(2) if not used in any business or occupation, a pick-up, panel truck or van.

If the vehicle replaces one shown in the Declarations, you have to ask us to insure it within thirty days only if you wish Damage to Your Auto Coverage to apply to the replacing vehicle.

The exclusionary language of the policy here in question, specifically defining the type of vehicle covered, appears in both the general liability and medical payments coverage portions of the policy. After a review of the policy, the Court is of the opinion that the plain meaning intended in this policy was that Arbogast would be afforded no coverage when he was operating a motorcycle or any other "owned but not insured for this coverage" vehicle. Therefore, given the clear language of the policy and the effect given thereto as above stated, the Court need only address the issue of whether this "owned but not insured for this coverage" exclusionary language in an underinsurance context is valid or contrary to a statute, regulation or public policy.

Any analysis herein must begin with a review of the West Virginia statute governing uninsurance and underinsurance and the court decisions thereon. In 1974, West Virginia law provided that uninsurance motorist coverage was mandatory and required to be a part of all automobile insurance policies. In 1974, West Virginia Code § 33–6–31(b) provided:

(b) Nor shall any such policy or contract be so issued or delivered unless it shall contain an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than the requirements of section two [§ 17D–4–2], article four, chapter seventeen-D of the Code of West Virginia, as amended from time to time:

It has been said that "as automobile transportation has attained a pervasive status in the organization of society and commerce, the state has a legitimate interest in assuring that the burden of loss in owning, operating, and maintaining automobiles be justly and equitably distributed. For this reason the Legislature has enacted the West Virginia Uninsurance Motorist Law, Code 33–6–31, as amended, which contains specific requirements applicable to insurance underwriters." *Bell v. State Farm Mutual Automobile Ins. Co.*, 157 W.Va. 623, 207 S.E.2d 147 (1974) 207 S.E.2d at

page 150. In 1974, the Supreme Court of Appeals of West Virginia in *Bell supra* held that an "owned but not insured for this policy" exclusion in an uninsurance provision of an automobile liability insurance policy was void as against public policy under West Virginia Code § 33–6–31. The Court in *Bell* held:

> ... because the exclusionary clauses are more restrictive than the uninsured motorist statute or add requirements not authorized by the uninsured motorist statute, they are repugnant to the statute and therefore void.

In 1979, the West Virginia Legislature amended the law to add paragraph (k) which provides as follows:

> (k) Nothing contained herein shall prevent any insurer from also offering benefits and limits other than those prescribed herein, nor shall this section be construed as preventing any insurer from incorporating in such terms, conditions and exclusions as may be consistent with the premium charged.

Plaintiff argues that the Legislature made this addition to the law in response to the *Bell* decision and amounts to a Legislative overruling of the Court's ruling. Plaintiff argues that this paragraph now permits an insurance company to incorporate exclusions into a policy commensurate with the risk involved and allows an insurer to adjust premiums to reflect the extent of coverage provided. Plaintiff points out that paragraph (k) follows with Judge Sprouse's dissent in *Bell* as the above reading of the law enacted following the *Bell* decision would follow the dissent's concern for free "bonus" coverage that was considered contrary to the legislative intent and the specific contract of the parties. On this point, the defendant argues that 33–6–31(k) addresses only those benefits and limits which the Legislature has told insurers they can "add to" policies written in this state. A review of the statute reveals no express provision in the law which prohibits an exclusion such as the "owned but not insured for this coverage" exclusion as presently before the Court.

Also in 1979, the Legislature amended 33–6–31(b) by adding the following language directly following the mandatory language of the first sentence therein regarding uninsurance:

> Provided that such policy or contract shall provide an *option* to the insured with appropriately adjusted premiums to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle up to an amount of one hundred thousand dollars because of bodily injury to or death of one person in any one accident, and, subject to said limit for one person, in the amount of three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of fifty thousand dollars because of injury to or destruction of property of others in any one accident. (emphasis added)

Thereafter, in 1982, the Legislature further amended the above by providing that the theretofore mandatory uninsurance coverage requirement could be specifically waived. Insurers are still required to provide uninsurance motorist coverage to all West Virginians, but now, insureds must affirmatively waive such coverage before such coverage is effectively deleted from their policy. The significance of this amendment has not yet been addressed by the West Virginia Supreme Court of Appeals.

Finally, in 1982, as to underinsurance coverage, 33–6–31(b) was further amended to require that:

> Provided further, that such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured. "Underinsured motor vehicle" means a motor vehicle with respect to the ownership, operation, or use of which there is liability insur-

ance applicable at the time of the accident, but the limits of that insurance are either (i) less than limits the insured carried for underinsured motorists' coverage, or (ii) has been reduced by payments to others injured in the accident to limits less than limits the insured carried for underinsured motorist's coverage.

The above provision does not make underinsurance coverage mandatory, as was the case in 1974 with uninsurance coverage before the new amendments. Now, 33–6–31(b) only permits that underinsured motorist coverage be provided as an "option" to the insured with "appropriately adjusted premiums." Prior to the 1982 amendments to paragraph (b), as discussed above, uninsurance coverage was mandatory and the decisions on this section of the statute addressed public policy in light of this legislative requirement. *Bell, supra; Tulley v. State Farm Mutual Automobile Insurance Co.*, 345 F.Supp. 1123, 1128 (S.D.W. Va.1972). Here, although given the above developments, the defendant insured still relies primarily on the holding in *Bell* in that this very same exclusion was held void against public policy in 1974 by the West Virginia Supreme Court of Appeals under a similar factual situation although in an uninsurance context.

■ The Court will adopt the reasoning set forth in Judge Sprouse's dissent in *Bell v. State Farm Mut. Auto. Ins. Co., supra* in this controversy and enforce the specific contract herein between the parties, which terms are unambiguous, containing clear and conspicuous provisions excluding motorcycles and "owned but not insured for this coverage" automobiles. Here, the policy terms concerning what is a covered auto is conspicuously placed at the first page of the policy with *no* mention of motorcycle coverage made. The defendant recognized this lack of coverage by his purchase of a motorcycle liability policy through another insurance company as the plaintiff insurer in fact does not provide such coverage. This recognition is further amplified in his affirmative waiver of underinsurance coverage with the second insurance company. Secondly, the "owned but not insured for this coverage" exclusionary language is

placed in obvious relation to the other policy terms and is printed in bold type throughout the policy, using plain, unambiguous language. Therefore, no painstaking reading of the policy terms is required herein and therefore no expectation as to insurance coverage could have existed, especially in light of the insured's own conduct in purchasing a motorcycle liability policy from another company, and then specifically waiving underinsurance coverage therein. In this light, the facts before the Court are clearly distinguishable from the matters in *National Mutual Insurance Company v. McMahon and Sons, Inc.*, 356 S.E.2d 488 (W.Va.1987) which decision the defendant would have this Court address.

As to the public policy aspect herein, it is quite clear that the underinsurance coverage provisions of 33–6–31 are not mandatory in nature and create no specific mandatory requirement applicable to insurance underwriters as once did the law regarding uninsurance coverage prior to the amendments other than making underinsurance coverage available as an option to West Virginia citizens. Further, a reading and review of the amendments to this law, as set forth above, reveals that significant changes have been added following the *Bell* decision on which ruling defendant primarily relies. Defendant cites various other foreign state court cases in support of her position, but such decisions do not aid the Court herein due to the many differences between the foreign motorist statutes and West Virginia's statutory scheme. Therefore, as underinsurance coverage is not mandatory and the West Virginia Legislature, in 1979, chose to amend this law in paragraph (k), allowing exclusions commensurate with risk involved and the premium charged, no public policy can be said to exist herein to which this exclusion runs contrary given the facts before the Court.

Here, an application of defendant's argument would allow an insured to pay premiums for underinsurance coverage on his car through a company that does not insure motorcycles, yet receive free coverage for his motorcycle where he has specifically waived such coverage under his motorcycle

171

carrier. This "bonus" would be "bestowed despite a specific contract between the parties to the contrary", *Bell v. State Farm, supra* 207 S.E.2d at page 151, Justice Sprouse's dissent.

Therefore, it is the opinion of the Court that plaintiff Transamerica Insurance Company's motion for summary judgment be GRANTED and defendant's motion for summary judgment be DENIED.

Judgment shall be entered accordingly.

The Clerk is directed to transmit certified copies of this Order to counsel of record herein.