504 S.E.2d 171

**Gladstone B. KELLY, Plaintiff Below, Appellee,**

**v.**

**Larry PAINTER, Jr., and Night Rock, Inc., A West Virginia Corporation, dba Gatsby's, Defendants Below, Appellees.**

**NIGHT ROCK, INC., Third–Party Plaintiff Below, Appellee,**

**v.**

**AETNA CASUALTY & SURETY COMPANY, Third–Party Defendant Below, Appellant.**

**No. 23969.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 20, 1998.

Decided June 22, 1998.

Concurring Opinion of Justice Starcher Aug. 7, 1998.

---

Lucien Lewin, Steptoe & Johnson, Martinsburg, for Painter.

Robert D. Aitcheson, Robert D. Aitcheson, L.C., Charles Town, for Night Rock.

Mark W. Browning, Shuman, Annand & Bailey, Wyant & Earles, Charleston, and James K. Thomas, II, Thomas, Thomas & Hafer, Harrisburg, PA, for Aetna.

## PER CURIAM: [1]

The appellant, Aetna Casualty and Surety Co. (Aetna), appeals the June 7, 1996 order of the Circuit Court of Berkeley County, West Virginia. The circuit court denied Aetna's motion for summary judgment and granted summary judgment to Night Rock, Inc., a restaurant and bar, doing business as Gatsby's. Aetna appeals, urging this Court to interpret and enforce the liquor liability exclusion as it is written in Gatsby's standard commercial general liability insurance policy. We believe the policy exclusion is clear and unambiguous as it is written; therefore, we reverse the judgment of the lower court.

### FACTS

At 5:05 a.m. on September 21, 1992, Larry Painter crossed the center line of the highway while traveling north on U.S. Route 11 and struck Gladstone Kelly's vehicle. Kelly was injured in the automobile accident. Painter had been a patron of Night Rock, Inc.'s bar, Gatsby's, which is located in Martinsburg, West Virginia. Painter testified in his deposition that he generally did not drink and that drinking three to four beers made him drunk. Earlier in the evening, Painter bought a case of beer at a convenience store; he opened one can on his way to Gatsby's. While at Gatsby's, he drank four to six Budweisers. As he was leaving Gatsby's, he consumed two glasses of alcohol with a group of men who were drinking in the parking lot. He testified that he blacked out as he was leaving the parking lot and remembers nothing until he awoke in the hospital four days later.

Dale Buck, Martin & Seibert, Martinsburg, for Kelly.

---

**1.** We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

Kelly filed the underlying action alleging, inter alia, that Gatsby's was negligent in serving alcoholic beverages to a visibly intoxicated person and in allowing individuals to congregate in the parking lot and consume alcohol.

At the time of the accident, Gatsby's was insured by Aetna under a standard commercial general liability policy of insurance. Under the terms of the policy, Aetna agreed to pay damages on behalf of the insured because of "bodily injury" caused by an "occurrence" and to defend the insured in any "suit" seeking damages to which the insurance applied. However, the policy contained a standard liquor liability exclusion, which states:

This insurance does not apply to:

(c) "bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) causing or contributing to the intoxication of any person;

(2) the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving, or furnishing alcoholic beverages.

Aetna received notice of Kelly's personal injury action, but based upon the exclusion, Aetna denied a defense and indemnification to Gatsby's. Specifically, Aetna denied coverage because Kelly alleged Gatsby's conduct "contributed to" Painter's intoxication and Painter was furnished alcohol while "under the influence" of alcohol. Gatsby's subsequently joined Aetna in the underlying action on a claim for declaratory relief. Gatsby's sought a determination regarding whether the commercial general liability policy issued by Aetna to Gatsby's afforded coverage for Kelly's claims.

Aetna filed a motion for summary judgment, arguing the general liability policy did not provide coverage under the circumstances of this situation. Aetna reasoned that coverage was foreclosed based upon the standard liquor liability exclusion and the claims which were brought against Gatsby's that related directly to the sale or service of alcohol. As a result of these claims, liability was predicated upon Gatsby's causing or contributing to the intoxication of Painter. Gatsby's filed a cross-motion for summary judgment, arguing the liquor liability exclusion was patently and latently ambiguous in that one could not determine whether the exclusion was applicable. Gatsby's contended this was so because Painter testified he spent two hours in the parking lot after the bar closed consuming alcohol which came from an unknown source and Painter's actual intoxication did not result from the sale and service of alcohol by the insured.

The circuit court denied Aetna's motion for summary judgment but granted summary judgment in favor of Gatsby's. The court found that Aetna had the duty to defend and indemnify Gatsby's in the Kelly action for the claims asserted in Count II, Paragraph 14 of Kelly's second amended complaint, that is, for permitting individuals to congregate and drink alcohol in the parking lot after closing hours. The principal basis for the court's ruling was a determination that the policy language was ambiguous. The court specifically stated:

3. The exclusion in question is facially ambiguous in its intended application to the facts of record in this case because the exclusion is qualified by the requirement that it applies only to insureds in the business of, *inter alia,* selling and dispensing alcoholic beverages. Construed in a light most favorable to the insured, as this Court is required to do, it appears to the Court that this exclusion is intended to apply when the insured is selling or dispensing alcoholic beverages.

4. In the case at bar, there is no evidence that the insured was selling or dispensing alcoholic beverages in its parking lot at a time when Defendant Larry Painter, by his admissions, [was] drinking there for a period of almost two (2) hours.

5. The plaintiff's claim which is potentially a covered claim under the Aetna

policy with Gatsby's is asserted in Count II, paragraph 14 of the Second Amended Complaint, wherein it is alleged that Gatsby's negligently permitted guests and invitees to congregate and carouse in its parking lot and engaged in behavior which spilled out onto the highway causing serious injury to the Plaintiff. The liability of Defendant and Third Party Plaintiff Night Rock flows from its breach of duty to a third party, Gladstone Kelly, to supervise its property to prevent loitering during and after business hours.

6. There is also latent ambiguity with respect to the application of the facts of this case to the language of the policy. The evidence thus far is the accident report which presumably reflects the investigating officer's expected testimony and the sworn deposition of Defendant Larry Painter. He says that he was not drunk when he left Gatsby's building and went into the parking lot. He says that he left the parking lot at around 3:15 a.m. and the accident report reflects that the accident occurred at about 5:05 a.m. Defendant Painter says that he drank beer with three black men that had chairs set up in the parking lot. There is no evidence as to where the men got the beer. Defendant Painter then says that he went to his car and finished drinking beer. All the while, the Defendant had a case of beer in the back seat of his car which he had purchased before driving to Gatsby's. As Defendant Painter started out of the parking lot, he was so drunk that he blacked out. While the Court does not speculate as to how a jury may find from the record developed thus far, it is clear that there is at least a colorable claim under the coverage of Gatsby's.

It is from this order that Aetna appeals.

## STANDARD OF REVIEW

"A circuit court's entry of summary judgment is reviewed *de novo*." Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). "Under Rule 56(c) of the West Virginia Rules of Civil Procedure, summary judgment is proper only where the moving party shows that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law." *Painter*, 192 W.Va. at 192, 451 S.E.2d at 758.

## DISCUSSION

On appeal, Aetna assigns two errors. First, Aetna contends the lower court erred in finding the liquor liability exclusion is patently and latently ambiguous. Second, Aetna contends the court erred in finding that a potentially covered premises liability claim exists in this case.

■ We begin our discussion by stating that the exclusion language contained in Gatsby's policy of insurance is plain, simple, and easy to understand. An ambiguous provision in an insurance policy is described as one that is " 'reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning[.]' Syl. Pt. 1, *Surbaugh v. Stonewall Casualty Co.*, [168] W.Va. [208], 283 S.E.2d 859 (1981), quoting syl. pt. 1, *Prete v. Merchants Property Insurance Co.*, 159 W.Va. 508, 223 S.E.2d 441 (1976)." Syllabus Point 1, in part, *Shamblin v. Nationwide Mut. Ins. Co.*, 175 W.Va. 337, 332 S.E.2d 639 (1985). The insurance policy that is questioned here contains no ambiguity. We previously quoted the policy language which clearly states the insurance does not apply to bodily injury for which the insured may be liable if the insured caused or contributed to the intoxication of the person involved and the insured is in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

There is no doubt that Gatsby's contributed to or caused Painter's intoxication. Painter stated that Gatsby's served him four to six beers. Even when Gatsby's allowed individuals to congregate in the parking lot and drink, the bar was providing people with a place to get drunk and was thereby contributing to their intoxication. To later claim that drinking alcohol from an unknown source in the parking lot changes this from a liquor liability claim to a premises liability claim is absurd. There is also no doubt that Gatsby's was in the business of selling alcoholic beverages. Gatsby's served beer to Painter while he was in the bar and then

allowed him to continue to drink in the bar's parking lot. The facts of this case fit squarely into the language of the exclusion included in Gatsby's policy of insurance.

This Court has previously said, "Language in an insurance policy should be given its plain, ordinary meaning." Syllabus Point 1, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W.Va. 430, 345 S.E.2d 33 (1986). Furthermore, Syllabus Point 2 of *Shamblin v. Nationwide Mut. Ins. Co.*, 175 W.Va. 337, 332 S.E.2d 639 (1985), states the following well settled principal:

" 'Where provisions in an insurance policy are plain and unambiguous and where such provisions are not contrary to a statute, regulation, or public policy, the provisions will be applied and not construed.' " Syl., *Farmers' & Merchants' Bank v. Balboa Insurance Co.*, [171] W.Va. [390], 299 S.E.2d 1 (1982), quoting syl., *Tynes v. Supreme Life Insurance Co.*, 158 W.Va. 188, 209 S.E.2d 567 (1974).

Stated another way, this provision reads as follows:

"Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syl. pt. 1, *Christopher . v. United States Life Ins.*, 145 W.Va. 707, 116 S.E.2d 864 (1960). *Syllabus Point 3, Soliva, supra.*

This Court has also said that "[i]n no event should the plain language of the policy be twisted or distorted[,] [and a] policy should never be interpreted so as to create an absurd result[.]" *Soliva*, 176 W.Va. at 432, 345 S.E.2d at 35. This rule of construction was written into a syllabus point, which reads as follows: "An insurance policy should never be interpreted so as to create an absurd result, but instead should receive a reasonable interpretation, consistent with the intent of the parties." Syllabus Point 2, *D'Annunzio v. Security–Connecticut Life Ins. Co.*, 186 W.Va. 39, 410 S.E.2d 275 (1991).

We believe the plain meaning intended in this policy is that Gatsby's would not be afforded coverage when a patron had been drinking at the bar and was involved in an accident thereby injuring himself or herself or a third person. If Gatsby's had desired an insurance policy that covered this type of liability, the bar could have obtained liquor liability insurance by paying the necessary additional premiums which are assessed as a percentage of the establishment's total alcohol sales. Even though it is expensive, liquor liability insurance is available in West Virginia. However that may be, this Court is not at liberty to rewrite the contract between the parties. No ambiguity exists. The plain language of the contract controls.

The exclusion is not difficult to understand and given its plain, ordinary meaning, we find that Aetna has no duty to defend or indemnify Gatsby's for any liability which may be imposed as a consequence of an adverse judgment in this case. The judgment of the Circuit Court of Berkeley County is reversed and this case is remanded with directions to enter summary judgment for Aetna.

Reversed and remanded.

STARCHER, Justice, concurring:

(Filed Aug. 7, 1998)

I concur with the majority's opinion that the liquor liability exclusion in question eliminates the insurance carrier's potential liability and duty to defend under the policy for any claim related to the "selling, serving or furnishing" of liquor. This exclusion applies, however, only to the extent that plaintiff Kelly seeks to impose liability on defendant-policyholder Gatsby's for "causing or contributing" to the intoxication of defendant Painter by selling him alcohol. I therefore agree that because of liquor liability exclusion is clear and unambiguous, the circuit court's ruling that the policy was vague and that Aetna Casualty and Surety Company was required to provide coverage to Gatsby's should be reversed.

However, as the majority opinion makes clear, this matter has been remanded for further consideration. On remand, the circuit court should determine whether insur-

ance coverage exists under one of the plaintiff's alternate theories of liability unrelated to the "selling, serving or furnishing of alcoholic beverages," such as the negligent maintenance by Gatsby's of its premises, namely its parking lot.

The liquor liability exclusion contained in the standard commercial general liability policy, as with any exclusion, must be strictly construed against the insurance carrier. Once a policyholder proves that an occurrence is within the scope of policy coverage, the insurance carrier seeking to avoid liability on the policy bears the burden of proving the operative facts necessary to the operation of the exclusion. *See* Syllabus Points 5 and 7, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987).

I have grave concerns regarding the inclusion of the liquor liability exclusion into a commercial general liability policy that is sold to a bar. It seems almost nonsensical for a business to pay premiums for a business insurance policy that specifically excludes coverage for the primary activity of the business—yet that is exactly what is at issue in this case. Aetna sold a bar a liability policy that does not cover any liability arising from the sale of liquor.

In such a situation, I would hope that an insurance agent selling a standard commercial liability policy to a business that sells liquor would specifically point out that no coverage exists for liability arising from liquor sales.[1] If a policyholder proves he or she had no knowledge of this exclusion prior to purchasing the policy, a court should find the exclusion unenforceable. Insurance policies are far from being contracts negotiated at arm's length, and are closer to being a packaged product sold on a take-it-or-leave-it basis. The law expects an insurance salesman to tell an insurance consumer that an insurance product does not do what the consumer would expect it to do.[2]

The Court assumed in this case that the bar owner was advised of the existence of the

---

1. *See Aetna Cas. and Sur. Co. v. Velasco*, 240 Cal.Rptr. 290 (Cal.App.1987) (insurer's failure to point out liquor liability exclusion to insured rendered exclusion unenforceable). *See also, Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.*, 366 N.W.2d 271, 277 (Minn.1985) ("[C]ourts recognize that people purchase insurance relying on others, the agent or company, to provide a policy that meets their needs.").

2. We do not seriously expect that an insurance consumer will carefully read and understand an insurance policy. In fact, most consumers never even see the policy until after the premiums are paid. *See, e.g. Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 905 (3d Cir.1997) ("The control exercised by insurers is especially problematic when the insured ... does not receive the actual insurance policy until after offering to buy insurance and paying the first premium.... [W]hen the insured does not know or have reason to know of the existence of an unfavorable provision, then the insured lacks the ability to negotiate a more favorable insurance policy, and [the insured's] sophistication or putative bargaining power is meaningless."); *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.*, 366 N.W.2d at 277 ("[I]n the majority of cases, a lay person lacks the necessary skills to read and understand insurance policies, which are typically long, set out in very small type and written from a legalistic or insurance expert's perspective."); *Rempel v. Nationwide Life Ins. Co., Inc.*, 471 Pa. 404, 410, 370 A.2d 366, 368–69 (1977) ("[T]he consumer's signature is not required on the policy. In fact, it is received weeks, or perhaps longer, after the signing of the application. The significant decision by the consumer is not made when the policy is received. The receipt of the policy is the acceptance of the offer previously made. It is at the time that the offer is being made by the consumer—when the application is being signed—that the consumer is making the decision to 'buy' or 'not to buy' the insurance. By the time the written policy is received, it has lost its importance to the insured."); *C & J Fertilizer, Inc. v. Allied Mut. Ins. Co.*, 227 N.W.2d 169, 174 (Iowa 1975) ("It is generally recognized the insured will not read the detailed, cross-referenced, standardized, mass-produced insurance form, nor understand it is he does."); J. Calamari, *Duty to Read: A Changing Concept*, 43 Fordham L.Rev. 341 (1974) ("[I]n the current era of mass marketing, a party may reasonably believe that he is not expected to read a standardized document and would be met with impatience if he did. In such circumstances an imputation that he assents to all of the terms in the document is dubious law. An assertion that he is bound by them would place a premium upon an artful draftsman who is able to put asunder what the salesman and the customer have joined together."); *Restatement of Contracts (Second)* § 207 (noting that standard-form agreements are seldom read). *See also, Davis v. M.L.G. Corp.*, 712 P.2d 985, 992 (Colo. 1986) ("[T]he detailed provisions of standardized contracts are seldom read by consumers.").

liquor liability exclusion. Further, while the language of the exclusion is clear, as indicated previously the exclusionary language must be strictly construed against the insurance carrier. In this case, the liquor liability exclusion operates to exclude coverage only for the bar's actions in "causing or contributing" to the intoxication of the defendant drunk driver. The liquor liability exclusion would not exclude coverage for the negligent training, supervision or management of the bar's employees. It also would not exclude from coverage injuries occurring on or near the bar's property arising from the negligent maintenance of the property, or failing to supervise intoxicated patrons.

In this case, it appears that the plaintiff has alleged that the bar was in some manner negligent in its management of its premises and parking lot. This issue was not fully addressed in the majority's opinion.[3] Accordingly, on remand the circuit court should examine the record to determine whether coverage exists under the commercial general liability policy sold by Aetna to the defendant bar for some action other than the sale of liquor. If the plaintiff is able to support a theory of liability against the policyholder bar that does not involve "causing or contributing to the intoxication" of defendant Painter arising from Gatsby's "business of … selling, serving or furnishing alcoholic beverages," then coverage and a duty to defend exists under the Aetna policy.

I therefore concur.

---

**3.** The record suggests that the owners of defendant Gatsby's were aware that the public was at risk if patrons congregated in its parking lot drinking or "sleeping it off" after hours. The bar apparently had a laudable policy of clearing the parking lot after hours, and calling taxis or the police for persons unable to drive. The record suggests that the bar also had gates to control access to the parking lot. Gatsby's failed to comply with its own policies regarding the management of its parking lot on the night the plaintiff was injured.