514 S.E.2d 393

Reba MITCHELL and Ralph Mitchell,
Plaintiffs, Appellants,

v.

FEDERAL KEMPER INSURANCE COM-
PANY, Jack Ray McCoy, Jr., and Does
One Ten, Defendants, Appellees.

No. 25063.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 16, 1998.

Decided Dec. 4, 1998.

**544**

William S. Thompson, Cook & Cook, Madison, West Virginia, Attorney for Appellants.

Mary H. Sanders, James C. Stebbins, Huddleston, Bolen, Beatty, Porter & Copen, Charleston, West Virginia, Attorneys for Appellees.

McCUSKEY, Justice.

This is an appeal by Reba Mitchell and Ralph Mitchell, her husband, from a declaratory judgment ruling made by the Circuit Court of Mingo County. In that ruling, the circuit court, in effect, held that the Mitchells were not entitled to collect underinsured motorists benefits under an automobile insurance policy issued to them by the appellee, Federal Kemper Insurance Company.

## BACKGROUND FACTS

On November 11, 1992, Jack Ray McCoy, Jr., whose drivers license had previously been revoked, and who was drunk, but who, nonetheless, was operating a motor vehicle on West Virginia Route 80, struck a vehicle driven by Reba Mitchell, one of the appellants in this proceeding. Mrs. Mitchell was severely injured.

Mr. McCoy had no automobile insurance. Mrs. Mitchell was an insured under an automobile policy issued by Federal Kemper Insurance Company. That policy, along with the riders attached to it, contained both uninsured and underinsured motorist provisions which provided Mrs. Mitchell with $100,000 in uninsured motorist coverage and with an additional $100,000 in underinsured motorist coverage. The policy also contained an "antistacking" clause.

Following the accident which resulted in injury to Mrs. Mitchell, the Mitchells filed a claim with Federal Kemper Insurance Company to collect under both the uninsured and underinsured motorist coverages in their policy. Federal Kemper Insurance Company paid the Mitchells $100,000 in uninsured benefits, the maximum amount to which they were entitled under the coverage. The insurer, however, refused to pay pursuant to the underinsured motorist provision of the policy. In doing this, Federal Kemper claimed that the underinsured motorist provision in the Mitchells' policy did not apply to the facts of the case since Mr. McCoy was an uninsured motorist, and not an underinsured motorist, under the provisions of the policy. It also took the position that the Mitchells could not stack the two coverages; that is, that they could not collect under both the uninsured and underinsured motorist provisions because of the "anti-stacking" clause contained in the policy.

In the present proceeding, the Circuit Court of Mingo County was asked to declare whether the Mitchells could or could not stack the two coverages, and whether they could or could not recover under both coverages. The circuit court ruled that the Mitchells could neither stack nor recover, and it is from that ruling that the Mitchells now appeal.

## STANDARD OF REVIEW

In this case we are primarily asked to review the circuit court's interpretation of an insurance contract. In *Payne v. Weston,* 195 W.Va. 502, 506–7, 466 S.E.2d 161, 165–66 (1995), we discussed the applicable standard of review in such cases. We stated that "[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination which, like the court's summary judgment, is reviewed *de novo* on appeal ." "Determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." *Pacific Indemnity Co. v. Linn,* 766 F.2d 754, 760 (3rd Cir.1985).

## DISCUSSION

■ As previously indicated, Federal Kemper Insurance Company claimed that the underinsured motorist provision in the Mitchells' policy did not apply to Mrs. Mitchell based on the particular facts of this case. Federal Kemper's position is premised on language contained in the Mitchell's policy, including riders to that policy. Specifically, one rider states: "We will pay only compensatory damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle," and an "underinsured motor vehicle" is defined as:

A land motor vehicle or trailer of any type for which the sum of all liability bonds or policies at the time of the accident provides at least the amounts required by the West Virginia Motor Vehicle Safety Responsibility Law but their limits are either: 1) less than the limits of liability for underinsured motorists coverage; or 2) reduced by payments to others injured in the accident to less than the limit of liability for underinsured motorists coverage.

It is the claim of Federal Kemper Insurance Company that this language requires that a vehicle be covered by insurance or bonds at least in the amounts required by the West Virginia Motor Vehicle Safety Law for it to be considered an "underinsured" motor vehicle, and it argues that, in the present case, the vehicle operated by Mr. McCoy had no insurance at all, and while it may have been an "uninsured" motor vehicle, it was not an "underinsured" motor vehicle within the meaning of the Mitchells' policy.

■ This Court has indicated that: "Where the provisions in an insurance policy are plain and unambiguous and where such provisions are not contrary to a statute, regulation, or public policy, the provisions will be applied and not construed." Syllabus, *Tynes v. Supreme Life Insurance Company of America*, 158 W.Va. 188, 209 S.E.2d 567 (1974). *See, also* Syllabus Point 2, *Shamblin v. Nationwide Mutual Insurance Company*, 175 W.Va. 337, 332 S.E.2d 639 (1985).

West Virginia Code § 33–6–31(b) recognizes that under West Virginia state law an appropriate definition of an "underinsured motor vehicle" is:

[A] motor vehicle with respect to the ownership, operation or use of which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either: (i) Less than limits the insured carried for underinsured motorists' coverage; or (ii) has been reduced by payments to others injured in the accident to limits less than limits the insured carried for underinsured motorists' coverage.

A close examination of the definition of an "underinsured motor vehicle" contained in the rider to the Mitchells' policy which is quoted above closely tracts this statutory language, and like the statutory language, requires that a vehicle have some liability coverage in effect for it to be considered a "underinsured" motor vehicle.

In view of the fact that the language in the Mitchells' policy so closely tracks the statutory language, we conclude that the language in the Mitchells' policy is consistent with the statute and the public policy behind it. Likewise, we are unaware of any regulation which the policy language contravenes.

The language in the Mitchells' policy is clear and unambiguous. It requires that a vehicle be covered for liability in at least some amount before it may be considered an "underinsured" motor vehicle. It indicates that the "underinsured" motorist provision in the Mitchells' policy does not apply unless it can be shown that Mr. McCoy's vehicle had at least some liability coverage. The circuit court in the present case found that Mr. McCoy's vehicle was an uninsured motor vehicle, that it had no liability coverage. This fact, in conjunction with the fact that the "underinsured" motorist provision in the Mitchells' policy applied only if the McCoy vehicle had some coverage, indicates that the circuit court was correct in holding that the Mitchells were not entitled to recover under the underinsured motorist provision.

■ There is an additional reason for concluding that the circuit court was correct in concluding that the Mitchells cannot recover under their underinsured motorist provision. Their policy contains an anti-stacking provision which states:

Regardless of the number of insureds, claims made, vehicles, or premiums shown in the declarations, or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the limit of uninsured motorists insurance **or** underinsured motorists insurance shown in the declarations. [Emphasis added.]

This anti-stacking language is identical to that contained in a policy examined by this Court in *Miller v. Lemon*, 194 W.Va. 129, 459 S.E.2d 406 (1995). In *Miller v. Lemon, id.* we recognized that this language, if enforce-

able, could effectively restrict the limits of recovery by preventing the stacking of coverages. In *Miller*, the Court went on to state that the anti-stacking provision in question was enforceable if it was not contrary to statute or public policy if the insured purchased a single insurance policy to cover two or more vehicles and received a multi-car discount on the total policy premium. Our conclusion was summarized in Syllabus Point 4, of *Miller v. Lemon*, *id.*, as follows:

> Anti-stacking language in an automobile insurance policy is valid and enforceable as to uninsured and underinsured motorist coverage where the insured purchases a single insurance policy to cover two or more vehicles and receives a multi-car discount on the total policy premium. If no multi-car discount for uninsured or underinsured motorist coverage is apparent on the declarations page of the policy, the parties must either agree or the court must find that such a discount was given. In such event, the insured is not entitled to stack the coverages of the multiple vehicles and may only recover up to the policy limits set forth in the single policy endorsement.

■ Although *Miller v. Lemon*, *id.*, dealt with the stacking of uninsured motorist coverages available for multiple vehicles, this Court believes that the same principles and same rationale should apply where an insured attempts to stack both uninsured and underinsured coverages. In essence, we find that anti-stacking language contained in an automobile insurance policy which precludes the insured from stacking uninsured and underinsured coverages in the policy is enforceable so long as that anti-stacking language does not contravene a statute or the public policy of this State.

In addition to containing "anti-stacking" language, the Mitchells' policy contains language establishing a limit of liability. That language states:

> If an accident is caused by a vehicle which is both an uninsured motor vehicle and an underinsured motor vehicle and both uninsured motorists coverage and underinsured motorists coverage apply under this policy, our maximum limit of liability for all damages resulting from that accident shall not exceed the sum of

> 1. the applicable limit of liability for uninsured motorists coverage; and

> 2. the applicable limit of liability for underinsured motorists coverage found in the declarations.

We believe that this clause read in conjunction with the "anti-stacking" language, establishes the limit of Federal Kemper's liability at the maximum of the sum of the applicable limit of liability for uninsured motorist coverage and the applicable limit of liability for underinsured motorists coverage in a situation when both coverages apply. However, under the facts of this case, Federal Kemper was liable for this combined limit only if Mr. McCoy's vehicle had liability insurance in effect at the time of the accident, and, rather clearly, he had no such insurance. Thus, the stacking of the underinsured motorist provision does not come into play at all in this case.

■ Another issue in the present case is whether the trial court properly granted summary judgment when discovery in the case was not yet complete. At the time the trial court granted summary judgment, it was undisputed that Mr. McCoy had no insurance coverage at all, and in determining whether to grant summary judgment on the basis of the anti-stacking language in the Mitchells' policy, the trial court concluded that the Mitchells had received a multi-car discount on their policy premium and that, given this fact, the anti-stacking language contained in their policy was legal and precluded them from recovering under both the uninsured and underinsured motorist coverages. At the time of reaching this conclusion, the court had before it an affidavit executed by a pricing analyst for Federal Kemper Insurance Company which stated that the Mitchells had received a multi-car discount. This affidavit, which was based upon premium rates which were a matter of public record, showed that the Mitchells paid $48.00 combined, multi-car premium for uninsured and underinsured motorist coverage for three vehicles. The affidavit also showed that if the Mitchells had taken out three separate policies, the cost for uninsured and underinsured coverage would have been $144.00. The Mitchells introduced no evidence showing that this was incorrect or

showing that they did not actually receive a discount. Further, review of the policy in question shows that it did cover multiple vehicles and that the premium charged for the combined uninsured and underinsured coverages was the premium, as a matter of public record, which was payable when the insured was allowed a multi-car discount.

In Syllabus Point 4 of *Aetna Casualty & Surety Company v. Federal Insurance Company of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court stated: "If there is no genuine issue as to any material fact, summary judgment should be granted but such judgment must be denied if there is a genuine issue as to a material fact."

In the present case, the Court believes there was no issue as to any material fact at the time the circuit court entered summary judgment and that summary judgment was consistent with our law.

The judgment of the Circuit Court of Mingo County is, therefore, affirmed.

Affirmed.

Justice MAYNARD, deeming himself disqualified, did not participate in the decision of this case.

Judge JAMES C. STUCKY, sitting by temporary assignment.