464 S.E.2d 582

**Denise MILLER, Plaintiff Below,**

v.

**Gregory LAMBERT, Defendant Below.**

No. 22957.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 19, 1995.

Decided Oct. 26, 1995.

---

Marion E. Ray, Hunt, Lees, Farrell & Kessler, Charleston, for Plaintiff.

Joanna I. Tabit, Steptoe & Johnson, Charleston, for Defendant.

MILLER, Retired Justice, sitting by temporary assignment: [1]

On September 5, 1988, the plaintiff, Denise Miller, who was fifteen years of age, was riding as a passenger in an automobile driven by Reba McCoy, her mother. The automobile was struck by another automobile operated by the defendant, Gregory Lambert, who had no automobile liability insurance coverage. As a result of the accident, the plaintiff was injured and her mother was killed. Subsequently, the administratrix of Mrs. McCoy's estate made a claim against Maryland Casualty Company which carried uninsured motorist coverage on the McCoy automobile in the amount of $50,000. This amount was paid along with $2,000 in medical benefits also provided pursuant to the policy. However, there was no court approval of the settlement under W.Va.Code, 55–7–7 (1982).

Subsequently, on September 1, 1993, the plaintiff filed suit against Mr. Lambert and sought to recover additional uninsured motorist coverage from Maryland Casualty Company as a result of her injuries. A copy of the suit papers were served on Maryland Casualty Company which answered on behalf of Mr. Lambert and also raised the issue that its uninsured motorist coverage was exhausted by its earlier payment to the administratrix of the mother's estate. Maryland Casualty Company asserts that its policy was a single limit policy which provided for a single

1. Pursuant to an Administrative Order entered by this Court on September 11, 1995, retired Justice Thomas B. Miller was recalled for the September 1995 term because of the retirement of Justice W.T. Brotherton, Jr.

payment, regardless of the number of persons injured.[2]

On the other hand, the plaintiff contends that under our financial responsibility law, W.Va.Code, 17D–4–2 (1979),[3] and the provisions of our uninsured motorist coverage statute, W.Va.Code, 33–6–31(b) (1988),[4] an insurance carrier must provide as a mandatory minimum for uninsured motorist coverage the amount of $20,000 for any one person for bodily injury or death and $40,000 for two or more persons injured or killed in any one accident. Consequently, the single limit policy was contrary to the multiple limits statutorily required.

The circuit court, faced with these questions, certified two inquiries to this Court. The first question related to whether the multiple limit coverage required under W.Va. Code, 17D–4–2, and W.Va.Code, 33–6–31(b), would preclude exhausting an insurance carrier's single limit coverage in its insurance policy in a settlement with one injured person to the detriment of a second injured person. The circuit court answered this question affirmatively.[5] The second question is whether the insurance carrier acted in good faith in settling the wrongful death claim of the mother for the policy limits, which would preclude the plaintiff's case. This question was answered negatively.[6]

## I.

◼ The first certified question as to the extent of any further available coverage involves an analysis of W.Va.Code, 33–6–31(b),[7] and its impact on a single limit policy where the limit was exhausted. This section applies to uninsured motorist coverage that an insurance carrier is required to have as an endorsement or provision in its policy. W.Va.Code, 33–6–31(b), provides a minimum coverage for uninsured motorist protection equal to that contained in our financial responsibility law, W.Va.Code, 17D–4–2.[8] This section requires a limit of $20,000 for bodily injury or death of one person and $40,000 for two or more persons injured or killed in any

2. The applicable policy language is:
   "LIMIT OF LIABILITY
   "A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:
   "1. 'Insureds;'
   "2. Claims made;
   "3. Vehicles or premiums shown in the Declarations; or
   "4. Vehicles involved in the accident."

3. The applicable language of W.Va.Code, 17D–4–2 (1979), is:
   "The term 'proof of financial responsibility' as used in this chapter shall mean: Proof of ability to respond in damages for liability, on account of accident ... in the amount of twenty thousand dollars because of bodily injury to or death of one person in any one accident, and, subject to said limit for one person, in the amount of forty thousand dollars because of bodily injury to or death of two or more persons in any one accident[.]"

4. W.Va.Code, 33–6–31(b), states, in relevant part:
   "Nor shall any such policy or contract be so issued or delivered unless it shall contain an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than the requirements of section two, article four, chapter seventeen-d of the code of West Virginia, as amended from time to time[.]"
   The accident occurred in 1988. Currently, this same language is contained in W.Va.Code, 33–6–31(b) (1995).

5. The language of the first certified question is:
   "Whether *W.Va.Code* § 17D–4–2 [1988] which mandates uninsurance coverage of Twenty Thousand Dollars ($20,000.00) because of bodily injury to or death of one person in any one accident, and, subject to said limit for one person in the amount of Forty Thousand Dollars ($40,000.00) because of bodily injury to or death of two or more persons in any one accident, precludes insurers from exhausting single policy limits in settlement with one of the insured persons to the detriment of the second injured person when only two insured persons or claimants are involved?"

6. The language of the second certified question states: "Whether a liability insurer may in good faith settle part of multiple claims arising from a single accident when the settlement exhausts the single policy limits of uninsured motorist coverage to the extent that one of the claimants is left without recourse against the insurance company?"

7. The applicable language of W.Va.Code, 33–6–31(b), is set out in note 4, *supra*.

8. The relevant language of W.Va.Code, 17D–4–2, is contained in note 3, *supra*.

one accident. We have recognized that uninsured motorist coverage is mandatory. *See, e.g., Marshall v. Saseen,* 192 W.Va. 94, 450 S.E.2d 791 (1994).

Moreover, in several cases, we have held that the mandatory requirement of insurance coverage under W.Va.Code, 17D–4–2, takes precedence over any contrary or restrictive language in an automobile liability insurance policy. For example, in *Jones v. Motorists Mutual Insurance Co.,* 177 W.Va. 763, 356 S.E.2d 634 (1987), the insurance policy had a specific exclusion for the owner's teenage son who was in a "high risk" insurance category. While driving the car, the son had an accident causing damage. Relying on the exclusion, the insurer refused to cover the loss. However, we held that this exclusion could not override the mandatory limits imposed under our financial responsibility law. In the Syllabus of *Jones,* we stated:

"A 'named driver exclusion' endorsement in a motor vehicle liability insurance policy in this State is of no force or effect up to the limits of financial responsibility required by *W.Va.Code,* 17D–4–2 [1979]; however, above those mandatory limits, or with regard to the property of the named insured himself, a 'named driver exclusion' endorsement is valid under *W.Va.Code,* 33–6–31(a) [1982]."

*See also Dairyland Ins. Co. v. East,* 188 W.Va. 581, 425 S.E.2d 257 (1992).

In *Dotts v. Taressa J.A.,* 182 W.Va. 586, 390 S.E.2d 568 (1990), we determined that an intentional tort exclusion in a motor vehicle liability insurance policy could not override the required coverage under W.Va.Code,

17D–4–2. In addition to the general language of W.Va.Code, 17D–4–2, setting out the limits of the financial responsibility law, we note that these limits are contained in W.Va.Code, 17D–4–12(b)(2) (1979), and are required to be a part of any motor vehicle policy issued in this State.[9]

The specific issue in this case was addressed by the Supreme Court of Minnesota in *Dorn v. Liberty Mutual Fire Insurance Co.,* 401 N.W.2d 662 (Minn.1987). There, the insurer issued an automobile liability policy providing a single limit of $60,000 for both liability and uninsured motorist coverage. As here, a mother and daughter were involved in an automobile accident with a third party who had no liability insurance. The daughter, who was driving, was seriously injured and was paid the entire policy limit for the uninsured motorist coverage. The mother almost two years later presented a claim for her injuries and was advised that the uninsured limits were exhausted. She then filed suit against Liberty Mutual claiming that its single limit policy violated the financial responsibility law, which required coverage for $25,000 for any one person and $50,000 for two or more persons in any one accident. The Minnesota court without extended discussion set this law in Syllabus Points 1 and 2:

"1. The insurance policy limits for uninsured motorist coverage cannot be exhausted by the first claimant from a multi-person accident.

"2. The extra coverage available to a later claimant is the $25,000 required by statute."

---

9. W.Va.Code, 17D–4–12(a) and –12(b)(2), state:
"(a) A 'motor vehicle liability policy' as said term is used in this chapter shall mean an 'owner's policy' or an 'operator's policy' of liability insurance certified ... by an insurance carrier duly authorized to transact business in this State, to or for the benefit of the person named therein as insured.
"(b) Such owner's policy of liability insurance:
  *  *  *  *  *  *
"(2) Shall insure the person named therein and any other person, as insured, using any such vehicle or vehicles with the express or implied permission of such named insured,

against loss from the liability imposed by law for damages arising out of the ownership, operation, maintenance or use of such vehicle or vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such vehicle, as follows: Twenty thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, forty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and ten thousand dollars because of injury to or destruction of property of others in any one accident."

*See also In the Matter of Michigan Mut. Ins. Co. (Miller)*, 170 A.D.2d 102, 573 N.Y.S.2d 305 (1991).

A related problem was discussed in *Bush Leasing, Inc. v. Gallo*, 634 So.2d 737 (Fla. App.1994), involving a Florida statute which required automobile lessors to carry liability insurance with limits of $100,000 per person and $300,000 per accident for bodily injury. The purpose of the statute, if such limits were carried, was to relieve. an automobile lessor from dangerous instrumentality liability. Bush Leasing required a lessee to purchase a single limit liability policy of $500,-. 000. The Florida court concluded this coverage did not meet the statutory requirement: "[T]he policy does not necessarily provide equivalent coverage for other parties who are injured in the same accident. We are, therefore, unable to conclude that Bush is exempt from liability pursuant to section 324.021(9)(b), Florida Statutes." 634 So.2d at 741.

From the foregoing, we conclude that a motor vehicle liability insurer which carries a single limit policy of $50,000 for uninsured motorist liability and pays the entire limit to one of two parties injured in the same accident is not exempt from the requirements of W.Va.Code, 33–6–31(b), which incorporates the mandatory insurance imposed by W.Va. Code, 17D–4–2, for uninsured motorist coverage.

## II.

■ The second certified question is whether Maryland Casualty Company's set- tlement for the policy limits with the administratrix of the deceased mother's estate can be considered a good faith settlement so as to preclude any further recovery. The basic issue is whether the insurer's settlement of one claim of a multiple claim accident which exhausts the policy limit is a good faith settlement.[10] We are cited cases that deal with this issue including an Annotation, *Basis and Manner of Distribution Among Multiple Claimants of Proceeds of Liability Insurance Policy Inadequate to Pay All Claims in Full*, 70 A.L.R.2d 416 (1960).

■ However, we find the issue of good faith does not depend on whether the settlement meets a good faith test. Rather, the issue is controlled by *Jordan v. Allstate Insurance Co.*, 184 W.Va. 678, 403 S.E.2d 421 (1991), in which the administrator settled a wrongful death claim. The decedent was survived by his father, who was the administrator, and a younger brother, who was a minor. The administrator settled without court approval as required by W.Va.Code, 55–7–7 (1982). This statute requires that, when a beneficiary in a wrongful death action is incapable of giving consent, there must be court approval of the settlement.[11] Allstate, as the liability carrier, paid under its policy and obtained a complete release from the administrator of the wrongful death claim. Subsequently, the minor beneficiary brought suit against Allstate claiming that it wrongfully deprived him of his share of the wrongful death settlement. We determined in Syllabus Point 1 of *Jordan:*

---

10. The language of the second certified question is contained in note 6, *supra*.

11. The accident in this case occurred on September 5, 1988. At that time, W.Va.Code, 55–7–7 (1982), applied. It stated in material part:

"The personal representative of the deceased may compromise any claim to damages arising under section five of this article before or after action brought, with the consent of the person or persons who would be entitled to the damages recovered in an action therefor brought by such representative under section six of this article; or *if any such persons are incapable from any cause of giving consent, the personal representative may compromise with the approval of the judge of the court wherein any such action has been brought,* or if none has been

brought, with the consent of the judge of the court wherein such action may be brought." (Emphasis added).

In 1989, W.Va.Code, 55–7–7, was amended to its present form. In *Arnold v. Turek*, 185 W.Va. 400, 407 S.E.2d 706 (1991), minor beneficiaries were involved and court approval of the settlement was obtained. W.Va.Code, 56–10–4 (1982), also states in part:

"In any action or suit wherein an infant or insane person is a party, the court in which the same is pending, or the judge thereof in vacation, shall have the power to approve and confirm a compromise of the matters in controversy on behalf of such infant or insane person[.]"

Moreover, W.Va.Code, 44–10–14 (1929), provides for court approval of infant settlements even though no suit has been filed.

"Under *W.Va.Code,* 55–7–7 [1982] the claim of a minor sibling of a victim of a wrongful death cannot be compromised without court approval."

We went on to assess the responsibility of the parties where there is a failure to follow W.Va.Code, 55–7–7, by holding in Syllabus Point 2 of *Jordan:*

"When the administrator of an estate of a wrongful death victim settles a claim under *W.Va.Code,* 55–7–7 [1982] with the tortfeasor's insurance carrier, but fails to seek court approval for the compromise of a minor's claim, the minor's primary cause of action is against the administrator and not the insurance carrier; but, if the administrator is insolvent, then the carrier is secondarily liable."

There is, of course, an obvious difference between the facts of this case and those in *Jordan.* Here, the injured plaintiff is not making a claim as a beneficiary under the wrongful death statute for the death of her mother. Rather, the plaintiff claims that she suffered her own personal injuries as a result of being a passenger in the automobile which her mother was driving. Nevertheless, it seems clear that both Maryland Casualty Company and the administratrix of the mother's estate were negligent in not complying with W.Va.Code, 55–7–7, as required by *Jordan.* Proper compliance would have brought the settlement to the attention of a circuit court and allowed a more equitable distribution of the total policy limit of $50,000. Moreover, the proposed settlement of the parties would have made the circuit court aware of the potential claim of the injured daughter which could have been factored into the case.

Thus, we find under *Jordan* that the administratrix of the estate of Reba McCoy bears the initial liability for the failure to seek court approval under W.Va.Code, 55–7–7, and we allow the plaintiff to amend the complaint to bring in the administratrix as was done in *Jordan.* However, it is difficult to understand how Maryland Casualty Company in making even a cursory investigation of the accident would not have discovered that the minor daughter, as the passenger, was injured. Therefore, we find Maryland Casualty Company also was negligent in failing to have the wrongful death claim settlement submitted for court approval and decline to hold that this was a good faith settlement. The underlying rationale of *Jordan* was that the failure to obtain court approval of a settlement where a minor is involved is an act of negligence against those injured by the payment of the settlement proceeds.

■  The circuit court answered the second certified question negatively indicating there was not a good faith settlement. We reach this same result by applying *Jordan* and concluding there was no good faith settlement because of the lack of court approval. In our cases dealing with certified questions, we have retained the right to address them with some flexibility. Our ability to reform certified questions was discussed at some length in *Kincaid v. Mangum,* 189 W.Va. 404, 432 S.E.2d 74 (1993), where we came to this conclusion in Syllabus Point 3:

"When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W.Va.Code,* 51–1A–1, *et seq.,* and *W.Va.Code,* 58–5–2 [1967], the statute relating to certified questions from a circuit court of this State to this Court."

### III.

In conclusion, we agree with the circuit court and answer the first certified question affirmatively and the second certified question negatively.

Answered and dismissed.

ALBRIGHT, J., did not participate.