**Karen Sue STONE, as executrix of the estate of Shawn Edward Stone, deceased, Plaintiff,**

**v.**

**CSX TRANSPORTATION, INC., et al., Defendants.**

**No. CIV.A. 3:97–1177.**

United States District Court, S.D. West Virginia, Huntington Division.

June 24, 1998.

Richard Neely, Neely & Hunter, Charleston, WV, for Plaintiff.

Robert L. Massie, Marc E. Williams, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, WV, for Defendants.

## MEMORANDUM OPINION AND ORDER

CHAMBERS, District Judge.

CSX Transportation, Inc. ("CSX") and the National Rail Passenger Corporation ("Amtrak") (collectively "Defendants") filed a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure to enforce a settlement agreement between Defendants and Karen Sue Stone ("Plaintiff"). Specifically, Defendants seek to enforce an agreement to settle a wrongful death claim entered into by the parties following a mediation session that was held prior to the initiation of this action.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 26, 1997, nineteen (19) year old Shawn Edward Stone ("decedent") was crossing Defendant CSX's railroad tracks in his car at the Ventroux Hollow grade crossing in St. Albans, Putnam County, West Virginia, when he was struck by a locomotive owned and operated by Defendant Amtrak. Shawn Edward Stone was killed instantly as a result of the collision.

On February 13, 1997, Plaintiff, decedent's mother, was appointed executrix[1] of decedent's estate.[2] Plaintiff hired a law firm to represent her son's estate in a wrongful death claim against Defendants. On October 28, 1997, Plaintiff and her attorney, Defendants and their attorneys, and a mediator held a mediation conference in an attempt to resolve the claim without the need for litigation. At the conclusion of the mediation

---

1. There is a dispute in this case regarding whether Plaintiff is properly classified as an executrix. Defendants argue that Plaintiff is an administratrix rather than an executrix because the decedent did not leave a will. Such a distinction is irrelevant for the purposes of Defendant's Rule 56 motion. Under West Virginia Code § 55–7–7, the rights and obligations of an executrix and an administratrix are identical. Accordingly, the Court will regard the terms "executrix" and "administratrix" as synonymous throughout this opinion.

2. In addition to his mother, decedent is survived by his father, two sisters and a brother.

session, Plaintiff and Defendants signed an agreement to settle this matter for $150,000.00.

Shortly after the parties signed the agreement to settle the claim, Plaintiff fired her attorney and hired her current counsel. Plaintiff's new counsel immediately notified the Defendants that his client wished to repudiate the agreement. On December 8, 1997, Plaintiff filed a wrongful death action in this Court seeking compensatory and punitive damages from the Defendants. Defendants filed an answer to Plaintiff's complaint in which they asserted defenses of settlement and release. Defendants asked the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure to enforce the settlement agreement. Plaintiff filed a Response to Defendant's Rule 56 motion in which she asserted that the wrongful death statute, West Virginia Code § 55–7–7, requires that parties obtain court approval of wrongful death settlements. Without court approval, Plaintiff argues, such settlements are not valid. Defendants argue that the wrongful death statute requires court approval only when minors are the beneficiaries. Defendant further argues that when an executrix of an estate fails to secure court approval, the beneficiaries' remedy is a negligence claim against the executrix of the decedent's estate.

## II.

## ANALYSIS

### A. The Question of Court Approval

The West Virginia wrongful death statute, W. Va.Code § 55–7–7, provides that "the personal representative of the deceased may compromise any claim to damages brought under ... this article before or after [an] action [is] brought ... Upon approval of the compromise, the court shall apportion and distribute such damages, or the compromise agreed upon ... in the same manner as in the cases tried without a jury." W. Va.Code § 55–7–7 (1989). Contained within the language of the statute is a mechanism for the compromise and settlement of wrongful death actions. Unlike other types of actions for damages, the wrongful death statute's

compromise and settlement mechanism specifically contemplates court approval.

■ Despite the plain language of the statute, Defendants argue that the wrongful death statute does not require court approval if the possible beneficiaries are adults. Defendants base their contention on *Jordan v. Allstate Insurance Co.*, 184 W.Va. 678, 403 S.E.2d 421 (1991), and *Miller v. Lambert*, 195 W.Va. 63, 464 S.E.2d 582 (1995). In *Jordan* and *Miller*, the West Virginia Supreme Court of Appeals held that court approval of settlement agreements is required in any wrongful death action where a minor is a potential beneficiary. *Jordan*, 403 S.E.2d at 423; *Miller*, 464 S.E.2d at 586. Defendants argue, by implication, that the duty of the parties to a wrongful death settlement to seek court approval attaches only when minors are the potential beneficiaries. Adult beneficiaries, Defendants assert, may be bound by an executrix's settlement agreement even without obtaining court approval. In support of their contention, Defendants rely on *Jordan* where the West Virginia Supreme Court of Appeals held that a consummated wrongful death settlement agreement constituted a binding release regarding adult beneficiaries even in the absence of court approval. *See Jordan*, 403 S.E.2d at 423. Defendants maintain that, like the adult beneficiaries in *Jordan* and *Miller*, Plaintiff had the power as executrix to bind all the potential adult beneficiaries without first obtaining their consent or the approval of a court. Defendants' reliance on *Jordan* and *Miller* is misplaced.

■ Wrongful death actions are separate and distinct from other types of estate claims. *See Bell v. Jolly*, 173 Misc.2d 273, 660 N.Y.S.2d 820, 822 (N.Y.Sup.Ct.1997). Unlike other types of estate claims, a wrongful death action exists for the benefit of a decedent's beneficiaries. It is not a claim that belongs to the decedent's estate. *See id.* Consequently, court approval of settlements is a requirement in many state wrongful death statutes. *See e.g.*, N.Y. EPTL § 5–4–6 (McKinney 1997); Va.Code § 8.01–55 (1950); 20 Pa. Cons.Stat. § 3323 (1997); S.C.Code § 15–51–42(B) (Supp.1995); N.C. Gen.Stat.

§ 28A–13–3 (1994). The requirement of court approval exists for the protection of the potential beneficiaries. Accordingly, many courts construe judicial approval as an absolute prerequisite to the validation of a compromise and settlement agreement. *See e.g., Ramey v. Bobbitt,* 250 Va. 474, 463 S.E.2d 437, 441 (1995); *Estate of Merryman,* 669 A.2d 1059, 1060 (Pa.Cmwlth.1995). Other courts appear to have carved limited exceptions to the judicial approval requirement. These courts permit settlement of wrongful death actions only if all the beneficiaries knowingly consent to a release. *See e.g., Jolly,* 660 N.Y.S.2d at 822; *Walker v. Essex,* 318 Md. 516, 569 A.2d 645, 648 (1990); *Anderson v. Clough,* 191 Or. 292, 230 P.2d 204, 210 (1951). West Virginia follows the latter approach.

■ In *Jordan,* the West Virginia Supreme Court of Appeals found a release binding upon the adults because the adults knowingly consented to the release. Because a minor lacks the capacity to enter into a binding contract or to release a party from liability, judicial approval is needed to protect the minor's interest. An executrix cannot act on a minor's behalf in settling a wrongful death action. However, an executrix also lacks the power to bind adults to a wrongful death settlement agreement without their approval. Again, an executrix's settlement powers are restricted in a wrongful death action because the action exists for the protection of the beneficiaries. The executrix is the protector of the estate. Consequently, court approval is required to bind beneficiaries who refuse to consent to a wrongful death settlement agreement.

Adults may bind themselves to a wrongful settlement agreement by executing a release of all claims against a potential defendant. By signing a release, adult beneficiaries manifest their consent to the wrongful death settlement agreement. When adult beneficiaries knowingly execute a release in wrongful death action, they may be bound by the terms of the settlement agreement even in the absence of court approval. Accordingly, there are two factors that must be present for an executrix to settle a wrongful death action without judicial approval. First, the

beneficiaries must be adults. Second, the adult beneficiaries must manifest their consent to the agreement by knowingly executing a release of their claims. Without the presence of both factors, a wrongful death settlement agreement cannot bind a beneficiary in the absence of judicial approval.

■ In *Jordan* and *Miller,* the wrongful death settlement operated as a binding agreement upon the adult beneficiaries because they executed a release of their claims. The instant case is distinguishable. None of the potential beneficiaries in this case signed a release of their claims. Other than the Plaintiff, the adult beneficiaries not only did not consent to the settlement agreement, they did not even know it existed. In fact, Plaintiff was the only adult beneficiary who negotiated a settlement agreement with Defendants. However, even she did not sign a release of her claims. Hence, neither the Plaintiff nor any potential beneficiary in this action consented to waive the statutorily mandated requirement of court approval. Accordingly, the Court FINDS that judicial approval is necessary for the enforcement of the settlement agreement in this case.

## B. The Proper Remedy

Defendants argue that even if court approval is required, the proper remedy is claim for damages against the Plaintiff. Once again, Defendants rely on the West Virginia Supreme Court of Appeals' decision in *Jordan.* In *Jordan,* the West Virginia Supreme Court of Appeals held that if an administrator of an estate of a wrongful death victim settles a claim under W. Va. Code § 55–7–7 without seeking court approval and a minor is a potential beneficiary, then "the minor's primary cause of action is against the administrator and not the [tortfeasor]." *Jordan,* 403 S.E.2d at 421 (Syl. pt. 2). In addition, West Virginia's highest court held that if the administrator is insolvent, then the tortfeasor is liable for the balance of the damages. *See id.* Based upon the *Jordan* court's holding, Defendants urge this Court to find that the beneficiaries' primary cause of action lies against the Plaintiff. Once again, Defendants reliance on *Jordan* is misplaced.

■ The failure of an executrix of an estate to seek court approval of a wrongful death settlement agreement where the potential beneficiaries are minors or where the adult beneficiaries have not consented to the agreement is per se negligence. *See Jordan,* 403 S.E.2d at 422; *Miller,* 464 S.E.2d at 588. Defendants argue that *Jordan* places primary liability on the executrix of an estate if the executrix negligently harms a potential beneficiary in the course of settling a wrongful death claim. Plaintiff attempts to distinguish *Jordan* by arguing that, in this case, the settlement has not been disbursed. Both parties' arguments misconstrue the key factor that distinguishes this case from *Jordan.*

■ An executrix of an estate is not negligent merely by signing a wrongful death settlement agreement that requires court approval. Rather, an executrix is negligent if she performs under the agreement without first securing court approval. Accordingly, two factors must be present for an executrix to be deemed negligent in the settlement of a wrongful death claim. Minors or non-consenting adults must be potential beneficiaries, and the executrix must perform under the wrongful death settlement agreement without first seeking judicial approval.

■ In both *Jordan* and *Miller,* the parties performed under the settlement agreement without first seeking court approval. The performance of the contract was a negligent act by the administrators of the estates. The administrators' negligent performance rendered them primarily liable for damages in an action by the potential beneficiaries. *Jordan,* 403 S.E.2d at 422; *Miller,* 464 S.E.2d at 588. In the instant case, there was no performance of the settlement agreement. Plaintiff signed the agreement, but she immediately repudiated it. Defendants did not tender payment of any portion of the $150,-000.00 settlement. In short, there is no evidence that she acted in a negligent manner. Accordingly, the Court **FINDS** that the Plaintiff is not primarily liable to the beneficiaries and that the beneficiaries' cause of action still lies against the Defendants.

## C. The Question of Enforcement

■ The final and ultimate question the Court must answer in evaluating Defendants' Rule 56 motion is whether to enforce the settlement agreement. In deciding whether to enforce a settlement agreement, there are several factors that a court must evaluate. The factors include: (1) the need for finality; (2) the promotion of settlement and compromise agreements; (3) the fairness to the party not seeking enforcement; (4) the prejudice to the party seeking enforcement; and (5) any other factor that affects fairness or public policy. *See e.g., Petty v. Timken Corp.,* 849 F.2d 130, 132–33 (4th Cir.1988); *Sanders v. Roselawn Memorial Gardens, Inc.,* 152 W.Va. 91, 159 S.E.2d 784, 792–93 (1968). In weighing the factors, courts must remember that the need for finality and the promotion of settlements are important public policy goals. Hence, a court should enforce a settlement unless the agreement will result in manifest unfairness to one of the parties or the compromise frustrates other important public policy objectives. *See Sanders,* 159 S.E.2d at 785 (Syl. pt. 1).

■ After balancing the equities, the Court concludes that the instant action is an unusual case where fairness dictates against enforcement of the wrongful death settlement agreement. In this case, the plaintiff signed a settlement agreement after an all-day, intensive mediation session. Soon after the mediation session, Plaintiff decided that she did not wish to maintain the agreement. She did not accept payment from the Defendants. She did not petition for court approval of the settlement. Given the immediacy of her repudiation, the Court finds that the Defendants will suffer no prejudice if the agreement is not enforced. However, the beneficiaries may suffer a tremendous injustice if the agreement is enforced. Other than the Plaintiff, none of the other beneficiaries participated in the negotiation session that resulted in the instant settlement agreement. None of the beneficiaries consented to the agreement or consented to allow the Plaintiff to bind them in a settlement agreement. In fact, the evidence suggests that the remaining beneficiaries did not even know about the settlement agreement. After

learning about the agreement, none of the beneficiaries want the settlement agreement to be enforced.[3]

If only the Plaintiff's and Defendants' rights were affected by the settlement agreement, the equities may have favored the Defendants. However, other non-party beneficiaries may be injured if the Court enforces the settlement agreement. Again, wrongful death actions exist for the benefit of the beneficiaries not the estate. Hence, the law and public policy strongly favor protecting the rights of the beneficiaries. Under the circumstances in the instant case, it is unfair to enforce a wrongful death settlement agreement against beneficiaries who did not consent to the agreement. After considering the timeliness of the Plaintiff's repudiation, the lack of prejudice to the Defendants and the injustice that may befall the beneficiaries, the Court FINDS that the equities favor not enforcing the settlement agreement. Accordingly, pursuant to W. Va.Code § 55–7–7, the Court declines to enforce the wrongful death settlement agreement that was entered into by the parties on October 28, 1997.

## III.

### CONCLUSION

For the reasons stated herein, the Court **DENIES** Defendants' motion to enforce the settlement agreement.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and to any unrepresented parties.

---

3. It appears to the Court that Plaintiff was not aware that the decedent's siblings were entitled to be beneficiaries of the wrongful death claim. However, Plaintiff's lack of awareness is not a relevant factor. Rather, the critical factor is that the beneficiaries did not consent, impliedly or otherwise, to the proposed settlement agreement. If Plaintiff had petitioned the Court pursuant to W. Va.Code § 55–7–7 to enforce the agreement to settle this action, the Court would have denied Plaintiff's petition based upon the beneficiaries' objections.