568 S.E.2d 10

Jeanne **TENNANT**, Individually and as Mother and Next Friend for Andrea Tennant and Addie Tennant, Both Infants, Plaintiff Below, Appellee,

v.

Russell A. **SMALLWOOD,** Jr., Defendant Below,

State Farm Mutual Automobile Insurance Company, Appellant.

No. 30036.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 27, 2002.

Decided April 5, 2002.

Concurring Opinion of Justice Starcher July 11, 2002.

Dissenting Opinion of Justice McGraw Aug. 2, 2002.

Jeffrey A. Holmstrand, Esq., Jennifer A. Keadle, Esq., McDermott & Bonenberger, PLLC, Wheeling, West Virginia, Attorneys for the Appellant.

Michael W. McGuane, Esq., McGuane & Haranzo, Wheeling, West Virginia, Attorney for the Appellee.

DAVIS, Chief Justice:

The appellant herein, State Farm Mutual Automobile Insurance Company [hereinafter referred to as "State Farm"], appeals from an order entered March 2, 2001, by the Circuit Court of Wetzel County. In that order, the circuit court granted summary judgment in favor of the appellee herein and plaintiff below, Jeanne Tennant, individually, and in her representative capacity as mother and next friend of her infant children, Andrea and Addie Tennant [hereinafter collectively referred to as "Ms. Tennant"]. The crux of the circuit court's ruling permitted Ms. Tennant to collect uninsured motorist (UM) benefits under her policy with State Farm despite the fact that she previously had recovered proceeds from the motor vehicle insurance policy insuring the defendant below, Russell A. Smallwood, Jr. [hereinafter referred to as "Mr. Smallwood"]. On appeal to this Court, State Farm complains that the circuit court erred by denying its motion for summary judgment, and by awarding such relief to Ms. Tennant, when Mr. Smallwood does not meet the statutory definition of an uninsured motorist so as to activate those coverage provisions in Ms. Tennant's State Farm policy. Upon a review of the parties' arguments, the record designated for appellate consideration, and the perti-

nent authorities, we reverse the decision of the Circuit Court of Wetzel County. Based upon her prior recovery from Mr. Smallwood's motor vehicle insurance, which insurance satisfied the financial responsibility laws of this State,[1] we conclude that Mr. Smallwood was not an uninsured motorist. Accordingly, the uninsured motorist provisions of Ms. Tennant's State Farm policy are not applicable to this accident.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On September 1, 1995, Ms. Tennant, her two daughters, and her mother-in-law [2] were injured when the vehicle Ms. Tennant was driving collided with Mr. Smallwood's vehicle. The accident occurred when Mr. Smallwood failed to stop at a stop sign at the intersection of Meadland Road and U.S. Route 50 in Taylor County, West Virginia. At the time of the collision, Mr. Smallwood had a policy of motor vehicle insurance with State Auto Mutual Insurance Company [hereinafter referred to as "State Auto"], with liability coverage limits for bodily injury

of $20,000 per person, $40,000 per occurrence, commensurate with the minimum financial responsibility limits enumerated in W. Va.Code § 17D-4-2 (1979) (Repl.Vol. 2000).[3] Ms. Tennant's policy of motor vehicle insurance was with State Farm, and such policy provided uninsured motorist (UM) coverage.[4]

Following the accident, Ms. Tennant filed suit in the Circuit Court of Wetzel County, on August 11, 1997, seeking recompense for her injuries from Mr. Smallwood. Thereafter, State Auto offered to pay its full per accident policy limits of $40,000 to compensate the occupants of Ms. Tennant's automobile for their injuries. Ms. Tennant notified her insurer, State Farm, of this settlement, and accepted the monies designated for her and her children upon receiving approval of the settlement and release from State Farm and the Circuit Court of Wetzel County.[5] Despite this consideration, neither Ms. Tennant's nor her daughters' injuries were fully compensated by the State Auto settlement. Although Ms. Tennant filed a claim for UM benefits under her State Farm motor vehicle insurance policy, State Farm denied coverage.[6]

1. See note 3, *infra,* quoting W. Va.Code § 17D-4-2.

2. Although Karen Tennant, Ms. Tennant's mother-in-law, was involved in this collision, she is not a party to the instant proceeding or to the underlying lawsuit.

3. This statute provides

[t]he term "proof of financial responsibility" as used in this chapter shall mean: Proof of ability to respond in damages for liability, on account of accident occurring subsequent to the effective date of said proof, arising out of the ownership, operation, maintenance or use of a motor vehicle, trailer or semitrailer in the amount of twenty thousand dollars because of bodily injury to or death of one person in any one accident, and, subject to said limit for one person, in the amount of forty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of ten thousand dollars because of injury to or destruction of property of others in any one accident.

W. Va.Code § 17D-4-2 (1979) (Repl.Vol.2000).

4. Ms. Tennant's motor vehicle insurance policy with State Farm did not, however, contain underinsured motorist (UIM) coverage. In fact, during the proceedings underlying the instant

appeal, State Farm and Ms. Tennant entered a stipulation to that effect, which dismissed State Farm's declaratory judgment action contesting UIM coverage and which the circuit court approved by order entered May 16, 2000.

5. The $40,000 payment from State Auto was distributed among the injured parties in accordance with the extent of their individual injuries, after such distribution had been approved by the circuit court in its February 11, 1998, order: Ms. Tennant received $11,000, Andrea received $13,000, Addie received $11,000, and Ms. Tennant's mother-in-law received $5,000.

6. In its October 13, 1997, correspondence to Ms. Tennant's counsel denying UM coverage, State Farm stated

[w]e are not objecting to your allegations with regard to clear liability, nor to the severity or nature of the injuries sustained by Jeanne Tennant, Andr[e]a Tennant, and Addie Tennant. We are, however, advising that it would appear the Uninsured Motor Vehicle Coverage from State Farm would not apply to this loss....

State Farm reiterated this declination of UM coverage in its June 12, 2000, letter to Ms. Tennant's attorney.

After communicating numerous such denials to Ms. Tennant, State Farm, on March 29, 2001, moved the Wetzel County Circuit Court to dismiss Ms. Tennant's lawsuit or, in the alternative, for summary judgment with a declaration by the court to the effect that UM coverage is not available to Ms. Tennant under the facts of this case. Ms. Tennant also filed a motion for summary judgment. By order entered March 2, 2001, the circuit court granted summary judgment in Ms. Tennant's favor, finding that she was entitled to collect UM benefits under her State Farm policy. In so ruling, the circuit court examined the pertinent provisions of Ms. Tennant's State Farm policy which explain the availability of UM coverage and define "uninsured motor vehicle":

> The portion of the State Farm policy which addresses uninsured coverage states, in pertinent part, as follows:
>
> "We will pay damages for bodily injury and property damage an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury or property damage must be caused by accident arising out of the operation[,] maintenance, or use of an uninsured motor vehicle."
>
> . . . .
>
> Uninsured Motor Vehicle—means:
>
> 1. A motor vehicle, the ownership, maintenance or use of which is:
>
>     (a) not covered by cash or securities on file with the West Virginia State Treasurer;
>
>     (b) not insured or bonded for bodily injury and property damage liability at the time of the accident[;] or
>
>     (c) insured or bonded for bodily injury and property damage at the time of the accident; but
>
>     (1) these limits of liability are less than required by the West Virginia Motor Vehicle Safety Responsibility Law; or
>
>     (2) the insuring company:
>
>     (a) legally denies coverage;

>     (b) is insolvent; or
>
>     (c) has been placed in receivership; or
>
> 2. A "hit and run" motor vehicle whose owner or driver remains unknown and which strikes:
>
>     (a) the insured[,]
>
>     (b) the vehicle the insured is occupying, or
>
>     (c) other property of the insured and causes bodily injury to the insured or property damage.

The court then determined this definition of uninsured motor vehicle to be ambiguous as the parties dispute the term's meaning and application to Ms. Tennant's claim for such benefits. Interpreting the ambiguity in Ms. Tennant's favor, in accordance with Syllabus point 4 of *National Mutual Insurance Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987),[7] the circuit court granted Ms. Tennant's motion for summary judgment and denied the motion of State Farm. From this decision of the circuit court, State Farm appeals to this Court.

## II.

## STANDARD OF REVIEW

In the instant appeal, the primary issues of contention are whether Ms. Tennant and her daughters are entitled to recover UM benefits under Ms. Tennant's policy of motor vehicle insurance with State Farm and whether the circuit court's grant of summary judgment to Ms. Tennant and her children, awarding them such benefits, was proper. The first issue, then, is whether coverage existed under the State Farm policy. We previously have observed, and so hold, that " '[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law.' " *Mitchell v. Federal Kemper Ins. Co.*, 204 W.Va. 543, 544, 514 S.E.2d 393, 394 (1998) (quoting *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir.1985) (citation omitted)). *See also Payne v. Weston*, 195 W.Va.

---

7. "It is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syl. pt. 4, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987).

502, 506–07, 466 S.E.2d 161, 165–66 (1995) ("The interpretation of an insurance contract ... is a legal determination which ... is reviewed *de novo* on appeal." (citation omitted)). When asked to resolve a question of law, this Court employs a *de novo* review: "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

■ To resolve the next query regarding the propriety of summary judgment in the case *sub judice*, we look to the standard for granting such relief. Summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." W. Va. R. Civ. P. 56(c). Thus, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Once a circuit court has decided a motion for summary judgment, we accord the circuit court's ruling thereon a plenary review: "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

With these standards of review to guide our decision of the case, we proceed to evaluate the merits of the parties' arguments.

### III.

### DISCUSSION

On appeal to this Court, State Farm contends that the circuit court erred by finding UM coverage when Mr. Smallwood had not only procured insurance in the limits required by the financial responsibility laws of this State, *see* W. Va.Code § 17D–4–2, but,

following the accident, State Auto also had paid these full policy limits to the injured parties, including Ms. Tennant and her two daughters. Ms. Tennant responds that the circuit court did not erroneously deny State Farm's summary judgment motion because the grammatical structure of the uninsured motor vehicle definition contained in the State Farm policy differed from the statutory definition of that term. This Court, then, is charged with resolving the issue of first impression presented by the instant appeal: is an insured entitled to recover UM benefits under his/her own policy of motor vehicle insurance for an accident in which he/she has collected motor vehicle insurance proceeds from the insurer providing the minimum limits of financial responsibility coverage to the tortfeasor driver? Despite the parties' assertions to the contrary, resolution of this issue does not depend upon a detailed linguistical analysis of the policy definition of an uninsured motor vehicle. Rather, the solution to this query may be found in the Legislature's treatment of this issue.

■ At the heart of the instant controversy is W. Va.Code § 33–6–31(c) (1995) (Repl. Vol.1996), which defines an "uninsured motor vehicle" as

a motor vehicle as to which there is no: (i) Bodily injury liability insurance and property damage liability insurance both in the amounts specified by section two, article four, chapter seventeen-d of this code, as amended from time to time; or (ii) there is such insurance, but the insurance company writing the same denies coverage thereunder; or (iii) there is no certificate of self-insurance issued in accordance with the provisions of said section. A motor vehicle shall be deemed to be uninsured if the owner or operator thereof be unknown: Provided, That recovery under the endorsement or provisions shall be subject to the conditions hereinafter set forth.

*See also* W. Va.Code § 33–6–31(j) (1995) (Repl.Vol.1996).[8] Of the various ascriptions

---

8. W. Va.Code § 33–6–31(j) (1995) (Repl.Vol. 1996) additionally provides that

[a] motor vehicle shall be deemed to be uninsured within the meaning of this section, if there has been a valid bodily injury or property

damage liability policy issued upon such vehicle, but which policy is uncollectible in whole or in part, by reason of the insurance company issuing such policy upon such vehicle being

given to this term, however, none of the enumerated conditions exist in the facts presently before us so as to render Mr. Smallwood's car an uninsured motor vehicle.

Subsection *i* of W. Va.Code § 33–6–31(c) directs that a lack of insurance in the amounts specified by W. Va.Code § 17D–4–2 constitutes the state of uninsurance. W. Va. Code § 17D–4–2 (1979) (Repl.Vol.2000), in turn, requires minimum limits of insurance in the amount of

> twenty thousand dollars because of bodily injury to or death of one person in any one accident, and, subject to said limit for one person, in the amount of forty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of ten thousand dollars because of injury to or destruction of property of others in any one accident.

In the case *sub judice,* the parties concede that Mr. Smallwood's State Auto policy contained this requisite amount of coverage. The next construction of "uninsured motor vehicle," set forth in W. Va.Code § 33–6–31(c)(ii), deems a motor vehicle to be uninsured when it is covered by a policy of insurance, but said insurer denies coverage thereunder. This construction also is inapplicable to these facts as the parties do not dispute that Mr. Smallwood's insurer, State Auto, has not denied coverage for the Tennants' loss, and, in fact, has entered a settlement

whereby it has distributed the full limits of Mr. Smallwood's policy coverage to the appellees herein.[9]

Likewise, subsection *iii* of W.Va.Code § 33–6–31(c) does not govern this proceeding as the Legislature has deemed financial responsibility to be satisfied either by compliance with the guidelines enumerated in W. Va.Code § 17D–4–2, and discussed above, or by acquiring a certificate of self-insurance. *See* W. Va.Code § 17D–2A–3 (1988) (Repl. Vol.2000).[10] As it is not controverted that Mr. Smallwood did, in fact, satisfy the requirements of § 17D–4–2, he was not required to additionally be self-insured.[11] Finally, the last definition of an "uninsured motor vehicle" provided by W.Va.Code § 33–6–31(c) contemplates that "the owner or operator [of the tortfeasor's motor vehicle] be unknown". It goes without saying that Mr. Smallwood's identity as the driver of the vehicle that struck Ms. Tennant's car is quite apparent and is not in question in this case.

Having determined that Mr. Smallwood was not an uninsured motorist in accordance with the applicable governing statute, we must then consider whether public policy dictates a finding consonant with the circuit court's ruling below. *See, e.g.,* Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975) ("The primary object in construing a statute is to

---

9. For the same reason, Mr. Smallwood's vehicle was not uninsured pursuant to the definition thereof provided by W. Va.Code § 33–6–31(j). *See supra* note 8.

10. In pertinent part, W. Va.Code § 17D–2A–3 (1988) (Repl.Vol.2000) directs that

> "[e]very owner or registrant of a motor vehicle required to be registered and licensed in this state shall maintain security as hereinafter provided in effect continuously throughout the registration or licensing period ....
> ....
> Such security shall be provided by *one of the following methods:*
> (a) By an insurance policy delivered or issued for the delivery in this state by an insurance company authorized to issue vehicle liability and property insurance policies in this state within limits which shall be no less than the requirements of section two [§ 17D–4–2],

article four, chapter seventeen-d of this code; or

> (b) By any other method approved by the commissioner of the department of motor vehicles of this state as affording security equivalent to that offered by a policy of insurance, including qualification as a self-insurer under the provisions of section two [§ 17D–6–2], article six, chapter seventeen-d; or
> (c) By depositing with the state treasurer such cash or other securities in the manner set forth in section sixteen [§ 17D–4–16], article four, chapter seventeen-d of this code.

(Emphasis added).

11. Furthermore, based upon the criteria attending self-insured status, it does not appear from the facts before this Court that Mr. Smallwood would have qualified for such coverage. *See* W. Va.Code § 17D–6–2(a) (1951) (Repl.Vol.2000) ("Any person in whose name more than twenty-five vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the commissioner[.]").

ascertain and give effect to the intent of the Legislature."); Syl. pt. 5, in part, *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908) ("A statute should be read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part[.]"). In addition to defining the nature of an uninsured motor vehicle, the Legislature has established a firm requirement that policies of motor vehicle insurance contain UM coverage:

> Nor shall any such policy or contract [of motor vehicle insurance] be so issued or delivered unless it shall contain an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than the requirements of section two, article four, chapter seventeen-d of this code, as amended from time to time[.]

W. Va.Code § 33–6–31(b) (1995) (Repl.Vol. 1996).

■ We, too, have recognized the Legislature's consideration of UM coverage to be of the utmost importance by succinctly holding that "[u]ninsured motorist insurance coverage is mandatory." Syl. pt. 1, in part, *Miller v. Lambert*, 195 W.Va. 63, 464 S.E.2d 582 (1995). *Accord Deel v. Sweeney*, 181 W.Va. 460, 463, 383 S.E.2d 92, 95 (1989). "The primary, if not sole purpose of mandatory uninsured motorist coverage is to protect innocent victims from the hardships caused by negligent, *financially irresponsible* drivers." *Perkins v. Doe*, 177 W.Va. 84, 87, 350 S.E.2d 711, 714 (1986) (internal quotations and citation omitted) (emphasis added). *Accord Lee v. Saliga*, 179 W.Va. 762, 764–65,

373 S.E.2d 345, 347–48 (1988). *See also Hartwell v. Marquez*, 201 W.Va. 433, 441, 498 S.E.2d 1, 9 (1997) ("This state's interest in the just compensation of its citizens for injuries received in motor vehicle accidents is evidenced by the requirement that all insurance policies issued or delivered in this state provide uninsured motorist coverage[.]" (citations omitted)). Stated otherwise, "the purpose of our statutory requirement that insurers offer uninsured ... protection in motor vehicle liability policies is to protect an injured insured when the defendant tortfeasor has ... no liability insurance coverage (uninsured)[.]" *State ex rel. Allstate Ins. Co. v. Karl*, 190 W.Va. 176, 180–81, 437 S.E.2d 749, 753–54 (1993) (citation omitted).

As our above analysis of W. Va.Code § 33–6–31(c) demonstrates, Mr. Smallwood was neither a "financially irresponsible driver," *Perkins*, 177 W.Va. at 87, 350 S.E.2d at 714, nor a tortfeasor without liability insurance coverage, *Allstate*, 190 W.Va. at 181, 437 S.E.2d at 754, as evidenced by his policy of motor vehicle insurance with State Auto containing the mandatory minimum coverages mandated by W. Va.Code § 17D–4–2. Thus, it is apparent that, just as the governing statute did not suggest a state of uninsurance to exist in this case, neither do the public policy reasons underlying the Legislature's requirement of mandatory UM coverage support a finding that Mr. Smallwood's vehicle was uninsured when it collided with the car driven by Ms. Tennant.[12]

■ Nevertheless, in her arguments to this Court Ms. Tennant urges us to uphold the circuit court's order awarding her UM benefits based upon its conclusion that ambi-

---

**12.** It goes without saying that the type of motor vehicle coverage that would ordinarily insure a claim such as that asserted by Ms. Tennant and her daughters, *i.e.*, that their recovery from the tortfeasor's insurer is inadequate to compensate their injuries, is underinsured motorist *(UIM)* coverage. *See* W. Va.Code § 33–6–31(b) (1995) (Repl.Vol.1996) (defining "[u]nderinsured motor vehicle" as "a motor vehicle with respect to the ownership, operation, or use of which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either: (i) Less than limits the insured carried for underinsured motorists' coverage; or (ii) has been reduced by payments to others injured in

the accident to limits less than limits the insured carried for underinsured motorists' coverage"). *See also Deel v. Sweeney*, 181 W.Va. 460, 463, 383 S.E.2d 92, 95 (1989) ("The purpose of optional underinsured motorist coverage is to enable the insured to protect himself, if he chooses to do so, against losses occasioned by the negligence of other drivers who are underinsured."). However, this coverage is not available to Ms. Tennant as she opted not to purchase such insurance, which decision is further memorialized by the parties' stipulation of that fact and the circuit court's entry of an order thereon. *See supra* note 4.

guities in her policy of insurance with State Farm support such a recovery. Such an interpretation of the policy language, though, would require us to disregard the governing statutory law and the legislative intent from which the statute was derived. It has previously been established that "this Court will not give effect to language in an insurance policy which conflicts with the intent of the uninsured ... motorist ... statute[.]" *Cox v. Amick*, 195 W.Va. 608, 613, 466 S.E.2d 459, 464 (1995) (citations omitted). *Accord* Syl. pt. 2, in part, *D'Annunzio v. Security–Connecticut Life Ins. Co.*, 186 W.Va. 39, 410 S.E.2d 275 (1991) ("An insurance policy should never be interpreted so as to create an absurd result[.]"). Given that the construction of the State Farm policy urged by Ms. Tennant would require us to completely ignore both the letter and intent of the UM statute, we cannot condone such an incongruous result. Therefore, we hold that an injured insured cannot collect UM benefits under his/her own policy of motor vehicle insurance where the tortfeasor driver carried motor vehicle insurance which satisfies the financial responsibility limits enumerated in W. Va.Code § 17D–4–2 (1979) (Repl.Vol. 2000), and the tortfeasor's insurer has paid such policy limits to the injured insured.[13] Consistent with this holding, we reverse the contrary ruling of the Circuit Court of Wetzel County.

## IV.

## CONCLUSION

Because we conclude that Ms. Tennant is not entitled to recover UM benefits under her policy of motor vehicle insurance with State Farm, we reverse the March 2, 2001, order of the Circuit Court of Wetzel County granting her such relief.

Reversed.

---

**13.** This holding echoes our continuing reluctance to expand the scope of UM coverage beyond that contemplated by the Legislature. *See, e.g., Metropolitan Prop. & Liab. Ins. Co. v. Acord*, 195 W.Va. 444, 452, 465 S.E.2d 901, 909 (1995) ("[W]here liability coverage is properly denied under an insurance policy, the vehicle does not automatically become an uninsured motor vehi-

STARCHER, Justice, concurring:

(Filed July 11, 2002)

I concur with the majority's opinion in the instant case for one simple reason: State Farm's policy cannot be read to provide coverage for the plaintiff's loss. The majority opinion, however, suggests an analysis of the case that is much more complex than it should be.

The majority opinion was partly correct in beginning its analysis by comparing the State Farm policy to *W.Va.Code*, 33–6–31(c) [1995], and determining whether the policy conformed to the statute's mandates. As we stated in *Adkins v. Meador*, 201 W.Va. 148, 153, 494 S.E.2d 915, 920 (1997) (with emphasis added):

In construing any insurance policy, it is appropriate to *begin* by considering whether the policy language is in accord with West Virginia law. The terms of the policy should be construed in light of the language, purpose and intent of the applicable statute.

This should not, however, have been the end of, or even the primary focus of, the majority opinion's analysis.

I believe that the majority opinion should have focused its analysis upon the language of the State Farm insurance policy. An insurance company is not required to follow *W.Va.Code*, 33–6–31 with exacting precision in crafting an automobile insurance policy. Instead, the statute simply mandates the minimum types and levels of coverage that an insurance policy must contain; if the insurance company so chooses, it may offer additional types and levels of coverage beyond that required by the statute. If the insurance company's policy does not contain the coverage required by state law, then courts will construe the statutorily required coverage into the policy. *W.Va.Code*, 33–6–17 [1957].

---

cle for the purposes of obtaining uninsured motorist coverage under the terms of the insurance policy." (citation omitted)); *Dairyland Ins. Co. v. East*, 188 W.Va. 581, 587, 425 S.E.2d 257, 263 (1992) ("[J]ust because an exclusion prevents an individual from recovering under the policy, the vehicle does not then become an uninsured motor vehicle." (footnote and citation omitted)).

The instant case actually hinges upon the language chosen by State Farm in drafting its policy, and not whether the policy mirrored the statute or contained the minimum coverage required by the statute or violated some public policy. The question presented was whether the *policy* could be construed to allow the plaintiffs to recover uninsured motorist coverage from State Farm when the alleged tortfeasor had automobile insurance. In other words, did State Farm intend to offer more coverage than was required by *W.Va.Code,* 33–6–31(c)?

I believe that if State Farm wanted to, it could have defined "uninsured motor vehicle" in its policy in such a way that the tortfeasor in the instant case would have been considered "uninsured," and the plaintiffs could have recovered benefits under the policy. However, after reading the policy language, I find no ambiguity in the policy's language and believe that State Farm clearly intended to provide uninsured motorist coverage only for losses caused by drivers who carried liability insurance less than that required by state law. The tortfeasor in this case had plenty of liability insurance coverage, and therefore the State Farm uninsured motorist coverage was not triggered.

In sum, I concur with the result reached by the majority opinion. I believe, however, that the reasoning employed by the majority should have focused on the policy's language, not state law.

McGRAW, Justice, dissenting:

(Filed Aug. 2, 2002)

The majority opinion in this case is grossly misguided. First, the controlling emphasis placed upon W. Va.Code § 33–6–31(c) (1995) (2000 Repl.Vol.) is inappropriate in the current context, as there is nothing in the law of this jurisdiction that prohibits an insurer from providing uninsured motorist coverage which extends beyond the minimum requirements of the statute. While State Farm obviously cannot issue a policy with uninsured motorist coverage that does not meet these statutory requirements, there is no prohibition against an insurer offering *more expansive* coverage to the insured—even that which effectively approximates underinsured motorist coverage. Indeed, W. Va. Code § 33–6–31(k) (1995) (2000 Repl.Vol.), which provides in part that "[n]othing contained herein shall prevent any insurer from also offering benefits and limits other than those prescribed herein," clearly permits an insurer to go beyond the minimum statutory requirements. *See Mitchell v. Broadnax,* 208 W.Va. 36, 61, 537 S.E.2d 882, 907 (2000) (McGraw, J., concurring in part and dissenting in part) (noting that under § 33–6–31(k) it is "easily conceivable that an insurer could offer, in addition to the required offerings . . ., other forms of coverage, including alternative uninsured or underinsured protection").[1] Thus, as Justice Starcher has stressed in his concurrence to this case, the majority opinion should have concentrated exclusively upon the language of State Farm's policy, since there is no question that the policy meets the minimum requirements of § 33–6–31.

Taking the analysis one step further, therefore, I fail to see how one could construe the language of State Farm's policy so as not to find coverage in the present case, particularly since "[i]t is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." Syl. pt. 4, *National Mut. Ins. Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356 S.E.2d 488 (1987); *see also* syl. pt. 4, *Riffe v. Home Finders Assoc.,* 205 W.Va. 216, 517 S.E.2d 313 (1999). The policy uses the disjunctive term "or" to separate the various meanings of an uninsured motor vehicle.[2]

---

1. *See also Dairyland Ins. Co. v. Fox,* 209 W.Va. 598, 607–8, 550 S.E.2d 388, 397–98 (2001) (Starcher, J., dissenting) (stating that "W. Va. Code, 33–6–31(k) should be interpreted to mean that an insurance company may offer coverages other than those prescribed by W. Va.Code, 33–6–31").

2. The specific provision at issue contains the following definition of an uninsured motor vehicle:

   Uninsured Motor Vehicle—means:
   1. A motor vehicle, the ownership, maintenance or use of which is:
   (a) not covered by cash or securities on file with the West Virginia State Treasurer;

This Court has previously observed that "the word 'or' is 'a conjunction which indicate[s] the various objects with which it is associated are to be treated separately.'" *Holsten v. Massey,* 200 W.Va. 775, 790, 490 S.E.2d 864, 879 (1997) (quoting *State v. Carter,* 168 W.Va. 90, 92 n. 2, 282 S.E.2d 277, 279 n. 2 (1981)). Moreover, the use of this term "ordinarily connotes an alternative between the two clauses it connects." *Albrecht v. State,* 173 W.Va. 268, 271, 314 S.E.2d 859, 862 (1984) (citing *State v. Elder,* 152 W.Va. 571, 577, 165 S.E.2d 108, 112 (1968)).

By employing the conjunctive term "or" in defining what constitutes an uninsured motor vehicle, State Farm has written a policy that provides uninsured motorist coverage where any one of the three enumerated circumstances is satisfied. Thus, since the tortfeasor in this case, Mr. Smallwood, had not obtained a certificate of self-insurance by depositing the required sum of money with the State Treasurer, his vehicle should be deemed uninsured under the provisions of the State Farm policy.

What the Court has done in this case is to effectively "chang[e] the disjunctive word, 'or,' . . . to the conjunctive 'and.'" *Crown Life Ins. Co. v. Garcia,* 424 So.2d 893, 894 n. 1 (Fla.Dist.Ct.App.1982) (citation omitted). "Courts are forbidden, however, from engaging in any such rewriting process, even in the guise of 'interpreting' an insurance policy . . . ." *Id.* (citation omitted). This admonition has even greater force in the current context, where the policy employs the very same term and grammatical structure in the following paragraph to indicate the separate, alternative claims that are compensable under the uninsured motorist coverage in the event of an incident involving "hit and run." State Farm certainly cannot be assumed to have intended that the term "or" should have entirely different meanings within the space of a single section of the policy.

While it may be true that State Farm did not purposely write a policy with such broad uninsured motorist coverage, the fact remains that the language of the policy is, at the very least, ambiguous as to what constitutes an uninsured vehicle. The Court in this case should therefore have construed the policy in favor of the insured, and accordingly affirmed the circuit court's grant of summary judgement.

I therefore respectfully dissent.

(b) not insured or bonded for bodily injury and property damage liability at the time of the accident; *or*

(c) insured or bonded for bodily injury and property damage at the time of the accident; but

(1) these limits of liability are less than required by the West Virginia Motor Vehicle Safety Responsibility Law; or

(2) the insuring company:

(a) legally denies coverage;

(b) is insolvent; or

(c) has been placed in receivership; or

2. A "hit and run" motor vehicle whose owner or driver remains unknown and which strikes:

(a) the insured;

(b) the vehicle the insured is occupying; *or*

(c) other property of the insured and causes bodily injury to the insured or property damage.

(Emphasis added.)